## POSTSCRIPT ENTERPRISES, Appellant,

v.

## CITY OF BRIDGETON, Appellee.

### No. 89–1074.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1989.

Decided June 11, 1990.

Murry A. Marks, St. Louis, Mo., for appellant.

Earl Robert Schultz, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Postscript Enterprises [1] appeals from a district court [2] order granting summary judgment in favor of the City of Bridgeton, Missouri, on Postscript's claim that Bridgeton Ordinance 87–14,[3] which regulates movie arcades with viewing areas designed for viewing by fewer than six people, prohibiting doors or curtains on the booths, violated its first amendment rights. For the reasons set out below, we affirm the order of the district court.

On February 4, 1987, the Bridgeton City Council enacted Ordinance 87–14, regulating the operation of movie arcades in the City. Although a formal record of the city council's proceedings concerning the ordinance does not exist, the council's rationale for the ordinance can be found in the two clauses that precede it:

> WHEREAS, the City Council finds that the viewing of movies within closed booths tends to promote crime, unsanitary conditions, and a pattern of conduct inimical to public health, decency, and order.

> WHEREAS, the City Council believes that the viewing of movies within

---

1. The complaint filed in the district court used the name "Postscript Enterprises" as the party plaintiff and recited that it was a corporation organized under Missouri law. Thereafter, a few of the filings by plaintiff in the district court used the name "Postscript Enterprises, Inc." and all of the filings in this court have used the name "Postscript Enterprises, Inc." We will use the first title chosen by Postscript in initiating this litigation.

2. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

3. The ordinance is reproduced in an addendum following this opinion.

closed booths is not in the interest of the public welfare.

In order to implement the city council's goals, the ordinance requires that all movie arcade operators [4] obtain a permit within thirty days of the ordinance's effective date. After that thirty-day period, the ordinance makes the operation of a movie arcade without a permit illegal. Section B requires movie arcade operators who wish to receive a permit to submit a written application to the city council. The application requires detailed information on all financially interested persons, local agents, and managing employees. Section C(2) requires that viewing areas designed for fewer than six people be visible from a continuous main aisle. Failure to conform with section C(2) is deemed a violation of the ordinance and can result in the revocation of the movie arcade operator's permit.

Instead of applying for a permit, Postscript filed this action for a declaratory judgment. Postscript argues that both section C(2) and section B of the ordinance are unconstitutional.

Initially, the district court held that Postscript had standing to assert its constitutional claims, even though it had not yet applied for a permit, and that Postscript was entitled to protection under the first amendment. 699 F.Supp. 1393. The court then granted the City's motion for summary judgment, because it concluded that: (1) section C(2) is a valid manner restriction on Postscript's first amendment rights and does not infringe upon the rights of customers wishing to view films; (2) section B is not a prior restraint on free speech, because there are "no provisions in the ordinance that would result in the advance denial of the permit;" (3) requiring a corporation to conform to the ordinance is valid; (4) adequate standards exist in the ordinance for deciding whether to grant or deny a permit; and (5) section D of the ordinance, which entitles permit holders to a hearing before their permits are revoked, implies that permit applicants will be given a hearing before their applications to obtain a permit are denied.

Postscript challenges the district court's order, arguing that the court erred because: (1) genuine issues of material fact remain concerning the City's rationale for the ordinance; (2) the ordinance's permit requirement violated Postscript's due process rights by failing to provide a hearing prior to the denial of a permit; and (3) the ordinance serves as a prior restraint on Postscript's first amendment rights by authorizing the denial of a permit on the basis of past criminal conduct and by failing to provide valid and ascertainable standards by which the city council could issue or deny permits.

### I.

"On appellate review of a decision to grant summary judgment, the court applies the same standard applied by the district court." *United Tel. Co. v. Johnson Publishing Co.*, 855 F.2d 604, 607 (8th Cir. 1988). "Summary judgment is granted if 'there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)). Further, we recognize that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini v. Sessions*, 900 F.2d 1234–38 (8th Cir.1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548–55, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1)).

The City's motion for summary judgment was properly supported by an affidavit submitted by the Bridgeton City Clerk. The affidavit contained a certified copy of the ordinance, as well as portions of the

---

**4.** Section A(2) of the ordinance defines a movie arcade as "any business wherein is operated a 'film or videotape viewing device.'" A film or videotape viewing device is defined in section A(1) as "any electrical or mechanical device in a business, which projects or displays any film videotape or reproduction into a viewing area which is designed for occupancy by no more than five (5) persons." *See* Addendum.

Final Report of the Attorney General's Commission on Pornography.

■ Postscript's response to the motion for summary judgment, however, suffers from a substantial procedural defect. Federal Rule of Civil Procedure 56(e) requires that when a motion for summary judgment is supported by affidavits, as was the case here, an adverse party may not rest on mere allegations or denial of the movant's pleadings. Rather, the adverse party must, by affidavits or otherwise, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, the affidavits must be made on personal knowledge, must set forth facts which would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated. *Id.* "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." *Id.*

In this instance, Postscript's sole response to the City's motion for summary judgment was an affidavit containing only conclusory statements from its attorney. "Attorneys' affidavits not based upon personal knowledge have been held not to comply with Rule 56(e)." *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986); *see Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950). Accordingly, since we conclude that the affidavit submitted by Postscript's attorney is not based on personal knowledge and does not set forth facts that would be admissible in evidence, we are satisfied that this response is inadequate to demonstrate the existence of issues of fact to survive a Rule 56 motion. We thus need look only to the City's support for the ordinance.

"The First Amendment does not require a city, before enacting ... an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, *so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.*" Renton v. Playtime Theatres, 475 U.S. 41, 51–52, 106 S.Ct. 925, 930–31, 89 L.Ed.2d 29 (1986) (emphasis added). In considering this issue we think the Fourth Circuit's discussion in *Wall Distrib. v. City of Newport News*, 782 F.2d 1165 (4th Cir. 1986), concerning local legislative determination, is particularly instructive.[5]

In assessing the reasonableness of local legislative determinations of ends and means under this quite deferential standard of constitutional review, we may not confine the local legislature to only what it knows and can foresee from purely local conditions already experienced. Legislatures can no more be held bound not to know what the whole world knows than can courts; legislative notice of facts must be deemed to run at least as wide as does judicial notice.

In enacting local legislation of this sort, it therefore cannot be thought unreasonable (at least for constitutional review purposes) for local legislative bodies to assume that human nature—at least in respect of such basic matters as human sexuality and its commercial exploitation—will not vary greatly between generally comparable metropolitan areas within even so heterogeneous a society as that of twentieth century America. *We therefore assess the reasonableness of Newport News' determination not solely on the basis—concededly sparse—of what had already demonstrably occurred within its geographical borders, but of what it might reasonably foresee in light of a sufficiently documented wider national experience properly reflected in matters of public record.* It would defy common sense to suppose that the city fathers of Newport News are not made aware in this day and time of comparable conditions in other

---

5. While the affidavit filed by the City does not rely upon it, it is evident that the ordinance here is similar to the ordinance involved in the *Wall* case. *Compare* Bridgeton Ordinance 87–14, *see* Addendum, *with* Newport News ordinance, *see* *Wall Distrib.*, 782 F.2d at 1167 nn. 1–2, 1170–71 n. 9. The *Wall* case was decided approximately a year before the enactment of the Bridgeton ordinance.

localities, and of the varied responses being made by other local governments to conditions already experienced. *We therefore assume that a proper factor in this local legislative determination of governmental interests was what was demonstrably being generally experienced in comparable localities....*

To insist that governmental interests justifying such legislation could only be found in specific local experiences and conditions would be unrealistically to require deliberate subjection to those experiences and conditions before attempting to avoid them.

*Id.* at 1169–70 n. 7 (emphasis added).

■ We realize that larger municipalities with greater resources available to them will in all likelihood have more detailed records supporting the enactment of ordinances like the one before us today. We had before us in *Doe v. City of Minneapolis*, 898 F.2d 612 (8th Cir.1990), such a record. The Bridgeton ordinance's introductory clauses, however, identify the council's concerns, which were the health and safety of the public, as well as describing its program for promoting those concerns, which consisted of the elimination of closed viewing booths. The findings of the Bridgeton City Council are consistent with findings and stipulations made by other city councils or legislative bodies in Minneapolis, Minnesota, *Id.* at 615; Marion County, Indiana, *Berg v. Health & Hosp. Corp.*, 865 F.2d 797, 803–04 (7th Cir.1989); Newport News, Virginia, *Wall Distrib.*, 782 F.2d at 1169; and Phoenix, Arizona, *Ellwest Stereo Theatres v. Wenner*, 681 F.2d 1243, 1245 (9th Cir.1982). Bridgeton attached to its motion for summary judgment certain pages out of the Final Report of the Attorney General's Commission on Pornography and, while there is no showing that the Bridgeton City Council was aware of this report or relied upon it, we at least observe that the findings of the city council are consistent with that report, which has been referred to in at least one United States Supreme Court opinion. *See Os-*

*borne v. Ohio,* ── U.S. ──, 110 S.Ct. 1691, 1697 n. 7, 109 L.Ed.2d 98 (1990) (noting the report's discussion of the ills of child pornography).[6] We believe that the "Whereas" clauses preceding the ordinance provide adequate factual undergirding for its enactment.

This conclusion is based on several factors unique to this case. First, while the second "WHEREAS" clause in the ordinance arguably states a general moral principle, which we have found unacceptable, in *Avalon Cinema Corp. v. Thompson*, 667 F.2d 659, 661 n. 6 (8th Cir.1981) (en banc), the first clause is factual and specific. Moreover, the City of Bridgeton, with a population in 1980 of 18,779, *Official Manual: State of Missouri* 838 (1989–90), need not conduct its own independent investigation of all health issues and may instead rely on the actions and findings of other governmental bodies. *See Renton*, 475 U.S. at 51–52, 106 S.Ct. at 930–31. Finally, we note that holdings by this and other courts considering similar ordinances combating the dangers posed by closed viewing booths have been uniformly upheld as valid manner restrictions on protected speech. *See Doe*, 898 F.2d at 616–19; *Berg*, 865 F.2d at 802–04; *Wall Distrib.*, 782 F.2d at 1168–70; *Ellwest*, 681 F.2d at 1245–47.

Accordingly, in view of the factors discussed above and the conclusory attack mounted by Postscript, we hold that Bridgeton Ordinance 87–14 is content-neutral and is a valid manner restriction on protected speech. *See Ward v. Rock Against Racism,* ── U.S. ──, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). Therefore, we conclude that summary judgment was properly granted in favor of the City.

## II.

The issues concerning the issuing of a permit by the Bridgeton City Council are in some respects more complex than those concerning open viewing booths. The City has, however, in its brief and at oral argu-

---

**6.** Since the district court did not find support for the ordinance in the report, we will not further consider it.

ment, stated that, when properly and narrowly construed, the ordinance entitles parties who have completed the application to a permit as a matter of right. We view this as a judicial admission that eliminates the necessity for considering the arguments made by Postscript concerning due process and prior restraint. These arguments presuppose the right of the Bridgeton City Council to deny a permit and the City flatly admits that no such right exists. Since we will not reach constitutional issues not squarely before us, we decline to consider these issues further. *See New England Legal Found. v. Massachusetts Port Auth.*, 883 F.2d 157, 176 (1st Cir. 1989); *United States v. Levy*, 865 F.2d 551, 553 (3d Cir.1989) (en banc).

### III.

Accordingly, we affirm the order of the district court.

### ADDENDUM

The substance of Bridgeton Ordinance 87–14 is as follows:

### AN ORDINANCE REGULATING MOVIE ARCADES

WHEREAS, the City Council finds that the viewing of movies within closed booths tends to promote crime, unsanitary conditions, and a pattern of conduct inimical to public health, decency, and order.

WHEREAS, the City Council believes that the viewing of movies within closed booths is not in the interest of the public welfare.

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF BRIDGETON, MISSOURI, AS FOLLOWS:

Section 1 Chapter 16 of the Code of the City of Bridgeton is hereby amended by adding a new Section 16–28 as follows.

Section 16–28 Movie Arcades

(A) Definitions

For the purposes of this section, the following words and terms shall have the definitions ascribed to them by this section:

(1) Film or videotape viewing device, [sic] The term "film or videotape viewing device" means any electrical or mechanical device in a business, which projects or displays any film videotape or reproduction into a viewing area which is designed for occupancy by no more than five (5) persons;

(2) Movie arcade. The term "movie arcade" means any business wherein is operated a "film or videotape viewing device;"

(3) Viewing area. The term "viewing area" means the area where a patron customer would ordinarily be positioned while watching a film or video viewing device.

(B) Permit

(1) It shall be unlawful for any person to operate, or cause to be operated, a movie arcade in the city unless such person has an unrevoked permit issued pursuant to this section.

(2) Any person desiring to obtain a permit for the operation of a movie arcade in the city shall make written application therefore [sic] to the city council, who shall approve or disapprove such application. Such application shall contain the following information about the applicant, any person financially interested in the business to be licensed, any authorized local agents, and any managing employee of the business to be licensed:

(a) Full legal name and any name by which the person is or has been known;

(b) Date and place of birth;

(c) Driver's license if available;

(d) Fingerprints;

(e) A current photograph;

(f) Any prior felony or misdemeanor conviction except minor traffic violations;

(g) Home and business address and telephone number;

(h) Any revocation or suspension of a license issued pursuant to this chapter;

(i) The names of any local authorized agent who will be managing or operating the amusement at the indicated

location and proof of their authority to act on behalf of the corporation;

(j) When an agent or other authorized representative is making application on behalf of any prospective licensee, the name, address and telephone number of a local agent authorized to conduct daily business shall be required in addition to authority to act on behalf of the prospective licensee;

(k) An applicant from out of state shall be required to provide the name of a statutory agent;

(l) Except for corporations listed on the major stock exchanges, the names and addresses of all persons financially interested in the business;

(m) Such information requested by the chief of police to determine the truth of the information required to be set forth in the application as set forth above;

(n) Any change in the information required to be provided above concerning the local authorized agent or the applicant shall be reported to the chief of police within ten (10) days of the change. All other information must be updated at the time of the renewal of the license;

(o) All persons regulated pursuant to this chapter must comply with this section within thirty (30) days of the effective date of this section.

(C) Violations

(1) It shall be unlawful for any person to procure, by fraud or false representation of fact, a permit for the operation of a movie arcade in the city.

(2) All viewing areas in movie arcades must be visible from a continuous main aisle and must not be obscured by any curtain, door, wall or other enclosure.

(3) A permit for the operation of a movie arcade shall not be transferable without the approval of the city council.

(D) Revocation.

Upon the violation of any of the provisions of this article, the city council shall have the right, in addition to any other remedies allowed by law, to revoke any permit granted under this division, after due hearing by him or his designate and upon not less than five (5) days' notice in writing to the permittee, such notice to be sent by registered letter or certified mail to the address given by the permittee when applying for such permit.

(E) Penalty

A person convicted for the violation of part (B) or (C) of this section shall be sentenced in accordance with Section 1–8 of the Bridgeton City Code.

(F) Compliance Date

All persons regulated pursuant to this section must comply with this section within thirty (30) days of the effective date of this section.

Section 2. This Ordinance shall be in full force and effect upon passage and approval.