**CHESAPEAKE B & M, INC.,**
**t/a Highway Craft, Gift &**
**Book Store**

v.

**HARFORD COUNTY, MARYLAND.**

Civ. No. B–92–2049.

United States District Court,
D. Maryland.

Aug. 25, 1993.

---

Howard J. Schulman, Baltimore, MD, for plaintiff.

Diane T. Swint, and Stephen W. Lutche, Bel Air, MD, for defendant.

WALTER E. BLACK, Jr., Chief Judge.

Presently pending before the Court are the Motion for Summary Judgment of Chesapeake B & M, Inc. and Harford County's Cross–Motion for Summary Judgment. Chesapeake B & M, Inc., filed the underlying complaint to challenge the constitutionality of the Harford County Adult Bookstore Licensing Law, or Harford County Bill No. 92–27. This bill requires an operator of adult bookstores to be licensed and establishes a system for such licensing.

According to Chesapeake, the County has violated the First Amendment of the United States Constitution by passing this bill. In support thereof, Chesapeake raises the following arguments: (1) the County created the licensing system with the primary purpose of suppressing the free speech of adult bookstore operators; (2) the County failed to set forth, during the enactment proceedings, substantial evidence to show that the bill serves important state interests; (3) the County failed to narrowly draw the bill to limit the amount of infringement on protected speech; (4) the bill delegates decision-making authority to officials whose actions are unreviewable; (5) the bill allows law enforcement agencies to conduct inspections of the bookstores at virtually any time; (6) the bill lacks effective time limitations on the administrative review process; and (7) the bill fails to provide for prompt judicial review of administrative decisions.

Chesapeake contends that the licensing law violates other constitutional provisions as well. For example, Chesapeake asserts that the random inspections by law enforcement agencies are proscribed by the Fourth Amendment. In addition, Chesapeake challenges the law as violative of Article I, § 9, clause 3, which prohibits bills of attainder or ex post facto laws.

Chesapeake has moved for summary judgment and Harford County has filed a cross-motion for summary judgment, alleging that no genuine issue of material fact exists with respect to any claim.

## I. SUMMARY JUDGMENT STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment is granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).

Here, the Court finds that there are no genuine issues of material fact. This conclusion is supported not only by the state of the record but also by the actions of the parties, both of whom have submitted summary judgment motions that concentrate almost exclusively on the legal interpretation of the Harford County ordinance. Accordingly, the Court shall review the law as applied to the undisputed facts of this case.

## II. STANDING

■ At the outset, the Court notes that Chesapeake has experienced no actual harm because it has not yet applied for a license under the Harford County ordinance. In light of this fact, Chesapeake is actually raising a facial challenge to the County ordinance. Under the traditional doctrine of standing, a federal court is typically constrained from exercising jurisdiction over an action unless the plaintiff has suffered some actual or threatened injury arising from an act of the defendant. *Heckler v. Mathews*, 465 U.S. 728, 738, 104 S.Ct. 1387, 1394, 79 L.Ed.2d 646 (1984). However, the U.S. Supreme Court has carved out an exception for facial challenges to statutes alleged to be violative of the First Amendment. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223, 110 S.Ct. 596, 603, 107 L.Ed.2d 603 (1990); *City of Lakewood v. Plain Dealer Publishing Co.*,

486 U.S. 750, 755–756, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988). In particular, a plaintiff may facially challenge a statute that allegedly vests a government official with "unbridled discretion" to decide whether to suppress protected speech. *FW/PBS*, 493 U.S. at 223, 110 S.Ct. at 603; *Members of the City Council for the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 n. 15, 104 S.Ct. 2118, 2125 n. 15, 80 L.Ed.2d 772 (1984). Because Chesapeake sets forth such an allegation here, the Court finds that standing exists.

### III. PRIOR RESTRAINT

■ Chesapeake primarily asserts that the Harford County licensing ordinance is an unconstitutional prior restraint on its exercise of protected speech. In resolving this case, the Court must first determine whether the ordinance is content-neutral or content-based. Although the Supreme Court has thus far refrained from categorizing licensing ordinances, *FW/PBS*, 493 U.S. at 223, 110 S.Ct. at 603, it is apparent to this Court that the instant ordinance is necessarily tied to the content of adult bookstores. Indeed, licensing is required for all adult bookstores, defined by the ordinance in terms of their content. For example, § 58–1(B) defines an adult bookstore as "a commercial establishment that as its principal business purpose sells or rents ... books ... that describe or depict a sexual act or depict human genitalia in a state of sexual arousal." The Court therefore cannot turn a blind eye to the fact that content plays a role in this licensing plan.

■ The Court must next ascertain whether the speech in question is protected by the First Amendment. Although the subject matter referred to in § 58–1(B) has overtones of indecency, the speech in the adult bookstores falls short of obscenity, which is a species of unprotected speech. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In fact, the parties themselves agree that the speech at issue deserves protection. For these reasons, the Court concludes that the ordinance involves protected speech.

■ As a general matter, restrictions on protected speech are presumed unconstitutional if their purpose is to restrict speech because of its content. *City of Renton v. Playtime Theatres*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986). However, if the restrictions are primarily aimed at the noncommunicative aspects of the protected speech, the government may impose reasonable time, place, and manner restrictions. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753–54, 105 L.Ed.2d 661 (1989); *Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1168 (4th Cir.1986). For such restrictions to pass constitutional muster, they must satisfy four safeguards designed to minimize the suppression of speech. First, the restriction must be within the constitutional powers of the government. *Wall*, 782 F.2d at 1169. Second, the restriction must further an important or substantial governmental interest. *Id.* Third, the governmental interest must be unrelated to the suppression of free expression. *Id.* And fourth, the resulting incidental restriction on free speech must be no greater than necessary to advance the government interest. *Id.* Essentially, the first three prongs of the *Wall* test refer to the power of the government to adopt a regulation related to speech, and the fourth prong refers to the proper method for implementing the regulation.

### A. The County's Power to Adopt the Ordinance

■ At the outset, the Court finds that Harford County acted within its constitutional powers to enact the ordinance. Because the ordinance is designed to prevent prostitution, neighborhood blight, declining property values, and the transmission of sexual diseases, the County is authorized to act pursuant to its general police powers. *See Wall*, 782 F.2d at 1169. Therefore, the first prong of the *Wall* test has been satisfied.

■ In construing the second prong, which requires the ordinance to advance important governmental interests, the courts limit the extent of their judicial review. In *Wall*, the Fourth Circuit held that "[j]udicial review goes only to whether the legislative

determination of justification and fitness 'is not facially without factual support, hence not arbitrary and capricious." *Id.* In conducting this review, the courts may rely on the governmental interests set forth in the ordinance itself. *Postscript Enterprises v. City of Bridgeton,* 905 F.2d 223, 227 (8th Cir.1990) (where one clause alone served as an adequate factual undergirding for the ordinance); *Mitchell v. Commissioners of Com. on Adult Entertainment Establishments,* 802 F.Supp. 1112, 1120 (D.Del.1992). In other words, the government need not conduct an independent investigation into the harms of unregulated adult bookstores. *Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931. Instead, the government can rely merely on a "sufficiently documented wider national experience properly reflected in matters of public record." *Wall,* 782 F.2d at 1169–1170 n. 7. Indeed, some courts have virtually taken judicial notice of the tendency of adult bookstores to cause undesirable secondary effects. *Id.; Postscript Enterprises,* 905 F.2d at 227.

■ In the instant case, the Harford County ordinance sets forth ten introductory clauses relating to the governmental interests served by the regulation. For example, the ordinance states that "[t]here is convincing documented evidence that sexually oriented businesses, because of their very nature, have a deleterious effect on nearby businesses and surrounding residential areas, causing increased crime and lowering property values." In addition, the ordinance expressly finds that sexually-oriented businesses often promote prostitution and casual sexual liaisons, thereby increasing the transmission of sexual diseases. The ordinance is thus designed to combat these secondary effects. Because other courts have held that the interests served by such an ordinance are substantial and "must be accorded high respect," *Renton,* 475 U.S. at 47–50, 106 S.Ct. at 929–930; *Mitchell,* 802 F.Supp. at 1119–1122, this Court finds that Harford County has satisfied the second prong of the *Wall* test.

■ The third prong requires that the asserted governmental interests bear no relation to the suppression of speech. To be constitutional, therefore, an ordinance must be predominantly concerned with eradicating the undesirable secondary effects of the speech activity. *See Renton,* 475 U.S. at 48, 106 S.Ct. at 929–30; *Mitchell,* 802 F.Supp. at 1117. In assessing the predominate concern, the "courts must look only to the face of the regulation and the identifiable interest advanced to justify the regulation." *Wall,* 782 F.2d at 1170. The motivation of the legislators is irrelevant. *Mitchell,* 802 F.Supp. at 1120. Indeed, as the Supreme Court noted in *United States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968), an otherwise constitutional statute will not be struck down "on the basis of an alleged illicit legislative motive."

Accordingly, the Court finds that the County's interests, as set forth on the face of the ordinance, bear no direct relation to the suppression of free speech. Each introductory clause evidences a concern for eradicating the non-speech byproducts of adult bookstores. For this reason, the Court finds that the ordinance satisfies the third prong of the *Wall* test.

## B. The Proper Method of Implementation

■ Having concluded that the County has the power to enact a licensing ordinance, the Court must next determine whether the ordinance satisfies the fourth prong of the *Wall* test. This prong requires the government to tailor the ordinance narrowly to avoid suppression of the protected speech. With special relevance to licensing regulations, the Supreme Court has identified three mandatory characteristics of a narrowly-tailored plan. First, the ordinance must not place unbridled discretion in the hands of a government official or agency. *FW/PBS,* 493 U.S. at 225, 110 S.Ct. at 605; *Wolff v. City of Monticello,* 803 F.Supp. 1568, 1573 (D.Minn. 1992). Second, any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained. *FW/PBS,* 493 U.S. at 227, 110 S.Ct. at 606; *Wolff,* 803 F.Supp. at 1573. Third, in the event a license is denied, expeditious judicial review of the denial must be available. *FW/PBS,* 493 U.S. at 227, 110 S.Ct. at 606; *Wolff,* 803 F.Supp. at 1573.

### 1. Unbridled Discretion

■ Chesapeake asserts that the Harford County ordinance vests unbridled discretion in County officials to suppress speech. Specifically, it refers to § 58–3 of the ordinance, which instructs the Licensing Department to

1) request that the Health Department inspect the bookstore to ensure that it is in compliance with all applicable county and state health laws; and

2) refer the application to any other agency from which the Department requests information concerning the application.

Within 30 days, the Health Department and the other agencies are directed to respond to the requests for information. Based upon this information, the Licensing Department makes a determination as to whether the applicant qualifies for a license. Chesapeake contends that the phrase "all applicable county and state health laws" is an ambiguous grant of authority and "brings with it a myriad of potential instruments of censorship."

■ When the government passes a licensing ordinance, it must ensure that the limits on discretion are "made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood*, 486 U.S. at 770, 108 S.Ct. at 2151. In other words, the extent of discretion must be "susceptible of objective measurement." *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1277 & n. 28 (5th Cir.1988) (where the ordinance listed eight explicit guidelines for exercising discretion). This requirement is necessary to minimize the possibility that a decision-maker will suppress protected speech.

Viewed against this legal backdrop, the Court finds that the Harford ordinance contains the requisite limitations on discretion. While this Court agrees with Chesapeake that the phrase "all applicable county and state health laws" might lead to abuse, the Supreme Court implicitly approved such a limitation in *FW/PBS*. In that case, the

court reviewed the general constitutionality of a licensing ordinance. The court found many constitutional failings in the ordinance, but it was silent on the question of whether there was unbridled discretion even though an application had to be "approved by the health department, fire department, and the building official as being in compliance with applicable laws and ordinances." 493 U.S. at 227, 110 S.Ct. at 605. By its reticence, therefore, the court condoned this limitation. Because the Harford provision relating to health codes is analogous, the *FW/PBS* decision directs this Court to find the provision constitutional.

As a general matter, therefore, the Court recognizes that the Licensing Department's discretion in reviewing applications is limited to the text of the ordinance as well as those laws that are generally applicable to similarly-situated businesses. While by no means exhaustive, a list of such laws would usually include health, safety, and zoning regulations. With these limitations in mind, there is no reason for Chesapeake to fear unbridled discretion.[1]

### 2. Specific Time for Administrative Review

■ Chesapeake also asserts that the ordinance violates the First Amendment because the administrative review process lacks effective limitations of time. Section 58–3 of the ordinance provides the following language:

A. Within 7 calendar days after receiving an application for a license to operate an adult bookstore, the [Licensing] Department shall: 1) request that the Health Department inspect the bookstore to ensure that it is in compliance with all applicable county and state health laws; and 2) refer the application to any other agency from which the [Licensing] Department requests information concerning the application.

---

1. Chesapeake makes the ambiguous assertion that the ordinance also violates the First Amendment because it permits random inspections by law enforcement agencies at any time the bookstore is open for business. Apparently, Chesapeake is concerned that the police officers will

conduct the inspections without clear guidelines, thus acting with unbridled discretion. The Court rejects this assertion in light of its ruling that the County may only act in accordance with the text of the ordinance and those laws which are generally applicable to like businesses.

B. Within 30 calendar days after receiving the [Licensing] Department's request: 1) the Health Department shall inspect the bookstore·and notify the [Licensing] Department of whether the bookstore is in compliance with the applicable health laws; and 2) any other agency to which the application was referred shall furnish the information the [Licensing] Department requested.

C. Within 7 calendar days after receiving all of the information required under subsection B of this section, the [Licensing] Department shall notify the applicant of whether it qualifies for a license.

D. If an applicant qualifies for a license under this Article, the [Licensing] Department shall issue a license to the applicant.

As a general matter, Chesapeake argues that the 44–day time limit is unreasonable, thereby constituting an unconstitutional prior restraint. In addition, Chesapeake contends that the ordinance "does not provide any means by which the bookstore can ensure that the information requested is supplied to the [Licensing] Department within the thirty day period." As a result, Chesapeake asserts that the licensing scheme has the potential for indefinite postponement.

A licensing ordinance is constitutional only if the licensor is required to "make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained...." *FW/PBS*, 493 U.S. at 228, 110 S.Ct. at 606; *Wolff*, 803 F.Supp. at 1574. Essentially, a licensing ordinance must satisfy a three-prong test: (1) it must establish specific time limits; (2) the time limits must be reasonable; and (3) the status quo must be maintained during the administrative process.

As applied to the instant case, the Court finds that § 58–3 is unconstitutional for failing to satisfy two of these prongs. First, the provision lacks specific time limits. While the ordinance facially establishes a 44–day period, it fails to anticipate that an agency may not furnish the requested information within the 30–day period. In other words, the ordinance lacks a provision that would automatically waive the Licensing Department's right to await receipt of the requested information if the agency does not respond within 30 days. Due to this defect, the ordinance allows the Licensing Department to delay the process by awaiting the recalcitrant agency's input. This delay would present an applicant with two difficult choices—to await the compliance of the agency or to file a mandamus action in court to force the agency to comply. In either case, the burden on the applicant would be contrary to the Supreme Court's requirement of specific time limits.[2]

Second, the ordinance fails to expressly provide ·that the status quo will be maintained for existing bookstores during the application process. While Harford County has assured the Court that the status quo is maintained in practice, there is no guarantee that the County will keep its word. For this reason, the ordinance is constitutionally defective.

The time schedule established by the ordinance passes constitutional muster in one respect: if the agencies comply with their deadlines, then the 44–day time period itself is reasonable. While the Court recognizes that such a determination is typically inappropriate for summary judgment, Chesapeake has failed to carry its burden to create a disputed issue of fact. Indeed, Chesapeake has never asserted that the County is deliberately prolonging the review process. The Court therefore is free to conclude that 44 days is reasonable in light of the administrative burdens facing the County. Moreover, this finding is consistent with the *Wolff* case, which held that a 90–day review period was reasonable and thereby constitutional. 803 F.Supp. at 1574.

Chesapeake asserts that the 44–day time period, regardless of its factual necessity, is unreasonable as a matter of law. In support, Chesapeake has cited a series of cases, all of which are distinguishable upon closer analysis. For example, in some cases,

---

**2.** Although this holding may appear severely limiting to the County, the ordinance does provide that the County is permitted at all times to inspect the premises and to suspend the license if the operator violates the ordinance or any applicable criminal laws.

the ordinances were deemed unconstitutional for failing to maintain the status quo, not for imposing an unreasonably long time period for review. *Teitel Film Corp. v. Cusack,* 390 U.S. 139, 141, 88 S.Ct. 754, 756, 19 L.Ed.2d 966 (1968); *Freedman v. Maryland,* 380 U.S. 51, 52, 85 S.Ct. 734, 735, 13 L.Ed.2d 649 (1965); *Famine Relief Fund v. West Virginia,* 905 F.2d 747, 753 (4th Cir.1990). In another case, an ordinance was found unconstitutional for requiring parade organizers to give 20 days' notice prior to marching. *N.A.A.C.P. v. City of Richmond,* 743 F.2d 1346, 1354–57 (9th Cir.1984). In that case, the court held that parade applications deserve expedited review because the timing of a parade is often critical to its message. *Id.* at 1356. Here, however, Chesapeake has not proffered any argument that its message needs to be communicated immediately. In any event, Chesapeake's bookstore is currently open for business. Finally, Chesapeake refers to *Elrod v. Burns* for the principle that even a minimal time period constitutes a First Amendment violation. 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). This principle is no longer controlling in this case in light of the *FW/PBS* decision in 1990, which provides for a "specified and reasonable time period." 493 U.S. at 228, 110 S.Ct. at 606.

Accordingly, the Court finds that § 58–3 is unconstitutional for failing to establish specific time limits and for lacking a provision to maintain the status quo. On the other hand, the Court finds that § 58–3 is constitutional in respect to the reasonableness of the 44–day time schedule.

### 3. Availability of Prompt Judicial Review

■ Chesapeake contends that the Harford ordinance is unconstitutional because it fails to provide for prompt judicial review of administrative decisions denying an application. Section 58–10 of the ordinance provides the following pertinent language:

> If the [Licensing] Department denies an application for a license or suspends or revokes a license, the applicant or licensee may appeal the [Licensing] Department's decision to the Circuit Court for Harford County.

In particular, Chesapeake asserts that the ordinance is defective because it does not limit the time in which the circuit court must resolve the appeal. To be constitutionally valid, Chesapeake contends that the ordinance must contain such limits as are found in Md.Ann.Code art. 27, § 418A. Under § 418A, a State's Attorney has the power to seek to enjoin obscene speech by filing an action for an injunction in the circuit courts. The court is then required to hold a trial within one day after the opposing party joins issue. Within two days following the trial, the court must render its opinion.

■ As the Supreme Court has made evident, a licensing ordinance need only provide for the *availability* of prompt judicial review. In *FW/PBS,* the Supreme Court twice indicated that such ordinances need only assure an avenue for judicial review. 493 U.S. at 227–28, 110 S.Ct. at 606 ("there must be the *possibility* of prompt judicial review in the event that the license is erroneously denied" and "expeditious judicial review of that decision must be *available*") (emphasis added). While the court thus recognized the importance of judicial review, it never held that the judiciary must restructure itself to resolve licensing disputes within a set time period. Instead, the court simply struck down the underlying ordinance because it contained no provision allowing for an appeal to a court.

■ In the instant case, the Court finds no support for Chesapeake's claims of unconstitutionality. In light of *FW/PBS,* the Harford County ordinance is constitutional because it expressly provides for judicial review by the County's circuit court. The County has no further obligation to set time limits on judicial review.[3] If Chesapeake is truly con-

---

**3.** If licensing ordinances were required to contain such time limits, Chesapeake has sought relief from the wrong defendant. Under Article IV, § 1, of the Constitution of Maryland, the circuit court is a repository of the judicial power of the *State,* not the County. Accordingly, because the County lacks the power to impose its will on the State's judicial system, Chesapeake should have named the State of Maryland as a party defendant.

cerned about expeditious review by the circuit court, the Court notes that Chesapeake has available a motion to shorten time pursuant to Maryland Rule § 1–204.

Accordingly, the Court finds that the provisions of § 58–10 of the Harford County ordinance are constitutional.

## IV. ADDITIONAL CHALLENGES

Chesapeake contends that the licensing law violates other constitutional provisions as well. It asserts that the random inspections by law enforcement agencies are proscribed by the Fourth Amendment. In addition, Chesapeake challenges the law as violative of Article I, § 9, clause 3, which prohibits bills of attainder or ex post facto laws.

### A. Random Inspections

■ Chesapeake alleges that § 58.7(A)(6) of the ordinance violates the Fourth Amendment's prohibition on unreasonable searches and seizures. The ordinance provides in pertinent part the following:

> The operator of an adult bookstore shall ... permit inspection of the bookstore and its premises by an employee or designated representative of the [Licensing] Department, the Health Department, and any law enforcement agency with jurisdiction in the County at any time the bookstore is occupied or open for business.

While the ordinance refers to three groups with power to inspect, Chesapeake only opposes inspections conducted by law enforcement agencies.

At the outset, the Court recognizes that Chesapeake has no standing to make this challenge because no law enforcement agency has as yet inspected the bookstore pursuant to the instant ordinance. Nevertheless, even assuming that standing exists, Chesapeake has no actionable claim based on the Fourth Amendment. In *Paris Adult Theatre I v. Slaton,* the Supreme Court held that the right to privacy does not extend to a place of public accommodation. 413 U.S. 49, 66–67, 93 S.Ct. 2628, 2640, 37 L.Ed.2d 446 (1973). To illustrate this point, the court observed,

> Conduct or depictions of conduct that the state police power can prohibit on a public street do not become automatically protected by the Constitution merely because the conduct is moved to a bar or a "live" theater stage, any more than a "live" performance of a man and woman locked in a sexual embrace at high noon in Times Square is protected by the Constitution because they simultaneously engage in a valid political dialogue.

*Id.* In the instant case, Chesapeake's business is certainly a public accommodation. The Court therefore cannot extend to Chesapeake a blanket right to prohibit random inspections by police officers. Accordingly, the Court rejects Chesapeake's challenge to § 58–7(A)(6) of the County ordinance.

### B. Bill of Attainder or Ex Post Facto Law

■ While unsure of the formal basis for its claim, Chesapeake contends that § 58–6 of the Harford County ordinance violates the constitutional prohibition against bills of attainder or ex post facto laws. In particular, Chesapeake asserts that § 58–6 effectively disqualifies every existing bookstore in the County from obtaining a license on account of past criminal convictions. Section 58–6(A) of the ordinance provides the following pertinent language:

> The [Licensing] Department may deny a license to any applicant or suspend or revoke a license if: ... (8) the applicant or licensee pleads guilty or nolo contendere with respect to, receives probation before judgment with respect to, or is convicted of a violation of any of the following sections of Article 27 of the Annotated Code of Maryland: ... (1) § 416D (displaying certain visual representations for advertising purposes)....

Chesapeake has proffered that each of the existing bookstores has been convicted of § 416D of the criminal code.

At the outset, the Court finds that this particular challenge is not ripe for resolution because Chesapeake has not yet applied for a license. Even if Chesapeake applies, it is not mandatory that the County deny the license based on § 58–6. This provision expressly vests the Licensing Department with discre-

tion to deny a license on the basis of prior criminal offenses. Indeed, in a recent revision of the provision, the County apparently deleted the automatic disqualification language, substituting the words "may deny" for "shall deny." Until the County does deny Chesapeake's application on this ground, the Court is restrained from resolving the issue.

■ Even if the issue were ripe, Chesapeake has failed to convince the Court that § 58–6 is unconstitutional. First, Chesapeake has improperly based its challenge on section 9, clause 3, of Article I, which simply provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." Upon review of the law, the Court finds that neither theory is applicable. Second, even if Chesapeake selected a more appropriate theory, such as the Due Process Clause of the Fourteenth Amendment, it cannot prevail.

■ The ex post facto prohibition "forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325–326, 18 L.Ed. 356 (1867)). As the Fourth Circuit has recently held,

> The prohibition against ex post facto laws applies only to penal legislation that imposes or increases *criminal* punishment for conduct predating its enactment.... The ex post facto clause is not applicable to legislation imposing civil disabilities.

*Karpa v. C.I.R.*, 909 F.2d 784, 786–87 (4th Cir.1990) (citation omitted). As applied to the instant case, the Court finds that § 58–6 is not an ex post facto law because it does not impose any criminal liability on Chesapeake. If anything, the ordinance simply imposes a civil liability based on Chesapeake's prior conviction.

■ A bill of attainder is a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct.

2777, 2803, 53 L.Ed.2d 867 (1977). As so defined, the instant ordinance does not constitute a bill of attainder because it does not legislatively determine the guilt of the bookstore operators. Indeed, the operators of the bookstores were found guilty of violating § 416D through a criminal process that is not alleged to be tainted. In addition, the ordinance is not a bill of attainder because it does not specifically identify a group for punishment. The Supreme Court has held that an ordinance specifically identifies a group if that group is "described in terms of conduct which, because it is past conduct, *operates only* as a designation of particular persons." *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 847, 104 S.Ct. 3348, 3352, 82 L.Ed.2d 632 (1984) (emphasis added). The Harford County ordinance, however, could disqualify not only the existing bookstores but also any future applicant who has committed a violation of § 416D. For this reason, the Court finds that the ordinance does not constitute a bill of attainder.

■ Chesapeake's challenge to § 58–6 might more properly be based on the Due Process Clause of the Fourteenth Amendment. The Due Process Clause "generally does not prohibit retrospective civil legislation, unless the consequences are particularly 'harsh and oppressive.'" *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 n. 13, 97 S.Ct. 1505, 1515 n. 13, 52 L.Ed.2d 92 (1977) (quoting *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938)). A legislative act with retroactive application is not "harsh and oppressive" if it is justified by a rational legislative purpose. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984); *United States v. Monsanto Co.*, 858 F.2d 160, 173 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

In this case, Harford County reserves the option of withholding licenses from applicants who have previously committed sexually-related criminal offenses. The County's purpose, apparently, is to prevent the recurrence of the criminal conduct. In the Court's view, such a purpose is eminently rational.

If the Court were to adopt Chesapeake's contrary position, a legislative body would never be able to pass civil legislation in aid of its criminal process. For example, a legislative body could never pass a gun control bill that contained a provision disqualifying convicted murderers from purchasing handguns. Therefore, because the consequence of Chesapeake's position would be to hinder the effective passage of laws, the Court finds that § 58–6 does not violate the Due Process Clause.

For all of the foregoing reasons, the Court grants in part and denies in part Chesapeake's Motion for Summary Judgment and Harford County's Cross–Motion for Summary Judgment as follows: (a) with regard to the issue of specific time limitations, Harford County Bill No. 92–27 is unconstitutional; and (b) in all other respects, Harford County Bill No. 92–27 is constitutional. A formal Order will be entered in conformity with this Memorandum Opinion.

## ORDER

In accordance with the Memorandum Opinion filed today in the above-captioned case, IT IS, this 25th day of August, 1993, by the United States District Court for the District of Maryland,

ORDERED:

(1) That the Motion for Summary Judgment of Chesapeake B & M, Inc. (Paper 6) and Harford County's Cross–Motion for Summary Judgment (Paper 9) BE, and the same hereby ARE, GRANTED IN PART and DENIED IN PART as follows:

(a) With regard to the issue of specific time limitations, Harford County Bill No. 92–27 is unconstitutional; and

(b) In all other respects, Harford County Bill No. 92–27 is constitutional;

(2) That Chesapeake B & M, Inc., may file for injunctive relief in the event it deems such relief necessary or appropriate.