**MGA SUSU, INC., Plaintiff,**

v.

**COUNTY OF BENTON, Defendant.**

**Civ. No. 5–93–142.**

United States District Court,
D. Minnesota,
Fourth Division.

May 27, 1994.

Randall Tigue, Minneapolis, MN, for plaintiff.

Michael Jesse, Esq., Benton County Atty., Foley, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

### DIANA E. MURPHY, Chief Judge.

Plaintiff alleges that the Benton County Development Code's conditional use permit requirements violate the first amendment to the United States Constitution and article I, section III of the Minnesota Constitution. Jurisdiction is alleged pursuant to 28 U.S.C. § 1343 and § 1367.

On December 6, 1993 the court issued an order preliminarily enjoining enforcement of § 11.6 of the code against plaintiff after concluding that it had demonstrated a likelihood of success on the merits. Now before the court are cross motions for summary judgment.

### I.

Plaintiff Mga Susa, Inc. (Mga Susa) has operated the King's Inn of Rice, Minnesota since January 1, 1994, when it replaced Bukaka, Inc. (Bukaka).[1] The change of management was precipitated by the execution of a search warrant at the inn on November 28, 1993. The warrant alleged that James Mayer, president, director, and shareholder of Bukaka, was involved in a Minneapolis cocaine transaction and had telephoned his drug supplier from the inn. No controlled substances or evidence of controlled substances were found on the premises.

After the execution of the warrant, Lyle and Barbara Quick, owners of the land on which the inn is located, demanded that Bukaka vacate the premises. Bukaka's other shareholders, Richard Wise and Jamie Kierzek, removed Mayer from his duties as president and director. Wise and Kierzek then formed Mga Susu. The Quicks permitted plaintiff to assume Bukaka's lease effective January 1, 1994.

The inn is a licensed restaurant but is not licensed to sell alcoholic beverages. The parties agree it functions primarily as a club or recreational facility, not a restaurant. The inn advertises "exotic dancing" and features nude women dancing on an elevated stage to pre-recorded music. Minors under 18 are not admitted. Patrons are charged a five dollar admission fee and are required to purchase a minimum of two beverages.

On September 17, 1993 Lynn Machula, the Benton County Planning and Zoning Administrator, informed the Quicks by mail that the inn could not operate without receiving a conditional use permit from the county. Machula characterized the inn as a "recreational facility" within the meaning of the Benton County Development Code and gave the Quicks until 4:30 p.m. on September 24th to apply for a conditional use permit. If they did not apply by that deadline, Machula's letter stated, the matter would be turned over to the Benton County Attorney for "proper action" under the code. The Quicks did not apply for the permit. Instead, Buka-

---

1. Mga Susu was substituted for Bukaka as plaintiff on December 29, 1993.

ka brought suit facially challenging the code's constitutionality.

The development code was promulgated pursuant to Minn.Stat. § 394.25, which enumerates the zoning powers afforded to county planning commissions. The current version of the code was promulgated in 1988. It defines "recreational facility" as:

> Any facility, park, or other property intended to be used principally for recreational purposes whether or not for profit and including, but not limited to the following: bowling alleys, go-kart tracks, golf courses, pool halls, vehicle/animal racing or amusement facilities, dance halls, skating facilities, taverns, theaters, fire arm ranges, camp grounds, carnival rides, beaches, swimming pools.

Benton Cty. Dev.Code § 3.142. Under the code, recreational facilities are permitted only in the "B" and "B–2" business districts and only with a conditional use permit. *Id.* § 7.6.2 and § 7.6A.2.[2]

The standards for granting a conditional use permit include the following:

> In granting a conditional use permit, the Planning Commission shall consider the effect of the proposed use on the health, safety, morals, and general welfare of the occupants of surrounding land and water bodies. Among other things, the Planning Commission shall make the following findings, where applicable:
>
> (1) The use will not create an excessive burden on parks, schools, streets and other public facilities and utilities which serve or are proposed to serve the area.
>
> (2) The use will be sufficiently compatible or separated by distance or screening from adjacent agricultural or residentially zoned or used land so that existing homes will not be depreciated in value and there will be no deterrence to development of vacant land.

> (3) The structure and sight shall have an appearance that will not have an adverse effect on adjacent properties.
>
> (4) The use in the opinion of the Planning Commission is reasonably related to the existing land use.
>
> (5) The use is consistent with the purposes of the Development Code and the purposes of the zoning district in which the applicant intends to locate the proposed use.
>
> (6) The use is not in conflict with the Land Use Plan of the County.
>
> (7) The use will not cause traffic hazards or congestions.

*Id.* § 11.6.

The code does not provide officials a time frame by which they must grant or deny an application. An applicant who has been denied a conditional use permit may not reapply for six months. *Id.* § 11.8. Applicants may appeal an adverse decision to the County Board. *Id.* § 11.4.7. The code does not specify the board's procedure for deciding appeals or give a time limit for such decisions.

The development code provides both civil and criminal penalties for violations. The county attorney may institute civil proceedings to "restrain, correct, or abate" code violations. *Id.* § 11.10.2. The county attorney may also prosecute violators; each day's violation is a separate misdemeanor. *Id.* § 11.10.1.

## II.

■ A local government has broad authority to regulate growth and development in the community through zoning, but zoning power must be exercised "within Constitutional limits." *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981) (striking down ordinance prohibiting all live entertainment, including nude dancing). Live stage performances featuring nude dancing enjoy first amendment protection.[3] *Id.* at 62, 101 S.Ct.

---

**2.** The code defines "conditional uses" as "the uses designated in each zoning district, which for their respective conduct, shall require reasonable conditions established by the Planning Commission." Benton Cty. Dev.Code § 3.183. Uses not listed as permitted or conditional are prohibited.

**3.** Defendant does not argue that the dancing performed at the inn is legally obscene and therefore outside of the protection afforded by the first amendment. *See Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Nudity, without more, does not make entertainment obscene. *See Jenkins v. Georgia,*

at 2179; *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975). Zoning ordinances are not invalid merely because they regulate the commercial exploitation of protected expression, however. *City of Renton v. Playtime Theatres*, 475 U.S. 41, 47, 106 S.Ct. 925, 928 (1986) (upholding zoning ordinance regulating adult entertainment).

■■■ Content based restrictions on speech presumptively violate the first amendment. *City of Renton*, 475 U.S. 41, 46–47, 106 S.Ct. at 928. Content neutral regulations "are acceptable so long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication." *Id.* The Benton County ordinance is content neutral because it applies to all businesses defined as "recreational facilities," not merely those with expressive aspects.

The Supreme Court considered the question of content neutral regulation affecting protected expression in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), in which the Court upheld an Indiana law prohibiting nude dancing. The Court stated that "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech elements can justify incidental limitations" on first amendment freedoms. *Id.* at 567, 111 S.Ct. at 2461. In examining the Indiana law, the Court utilized the test laid out in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Under this test, government regulation of activity combining speech and nonspeech elements is constitutional if:

1) it is within the constitutional power of the government;

2) it furthers an important or substantial governmental interest;

3) the governmental interest is unrelated to the suppression of free expression; and

4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the government interest.

*Id.* at 376–77, 88 S.Ct. at 1678–79; *Barnes* at 567, 111 S.Ct. at 2461.

Because the Benton County code employs a licensing system, the fourth factor in the test requires consideration of whether the system constitutes an unlawful prior restraint on first amendment protected expression. *See Dease v. City of Anaheim*, 826 F.Supp. 336, 342 (C.D.Cal.1993); *Chesapeake B & M, Inc. v. Harford Cty., Maryland*, 831 F.Supp. 1241, 1247 (D.Md.1993).

■■ The development code imposes a prior restraint because all those seeking to operate live theatres, cinemas, or other recreational facilities with protected expressive elements must first receive a permit.[4] No part of Benton County is available as of right to such businesses. "While 'prior restraints are not unconstitutional per se ... [a]ny system of prior restraint [bears] a heavy presumption against its constitutional validity.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224–25, 110 S.Ct. 596, 604, 107 L.Ed.2d 603 (1990) (*quoting Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975)).

■■■ Regulations providing officials with unfettered discretion to deny licenses or permits on the basis of content of protected speech are unconstitutional. *City of Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750, 769–72, 108 S.Ct. 2138, 2150–52, 100 L.Ed.2d 771 (1988) (striking down ordinance giving mayor authority to impose "terms and conditions deemed necessary and reasonable" in issuing permits for newspaper boxes); *c.f. Forsyth County, Georgia v. Nationalist Movement,* —— U.S. ——, ——, 112 S.Ct. 2395, 2403, 120 L.Ed.2d 101 (1992) (striking down parade permit ordinance requiring that marchers pay unspecified fees to be deter-

418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974).

4. As noted in the December 6, 1993 order granting plaintiff's motion for a preliminary injunction, the code applies to rifle ranges, bowling alleys and other recreational uses that are not ordinarily subject to first amendment protections. The code sweeps broadly, however, and applies to uses which are undoubtedly subject to protection, such as theaters and cinemas.

mined by officials). The regulation must provide narrow, objective, and definite standards to guide the licensing authority. *Shuttlesworth v. Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969).

Plaintiff argues that the Benton County code is unconstitutional under *City of Lakewood* because it provides officials with too much discretion in application. Defendant responds that officials are instructed that they must consider the constitutional implications of a proposed use, and that they must make specific findings that a use is unsuitable before they may deny an application. According to defendant, these practices ensure that officials do not exercise unlawful discretion.

The Supreme Court has made it clear that in determining whether a licensing scheme vests unlawful discretion in decision makers, the question is not whether they will abuse the discretion given to them, but whether it exists at all. "It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger." *Forsyth County,* —— U.S. at —— n. 10, 112 S.Ct. at 2403 n. 10. For this reason "[l]imits on discretion in licensing schemes must 'be made explicit by textual incorporation, binding judicial or administrative construction, or well established practice.'" *Wolff v. City of Monticello,* 803 F.Supp. 1568, 1574 (D.Minn.1992) (*quoting City of Lakewood,* 486 U.S. at 770, 108 S.Ct. at 2151).[5] The court therefore must consider whether the statute as written meets the requirements set forth in cases such as *City of Lakewood.*

A recent district court decision analyzes the issue of discretion in conditional use permit licensing systems. *Dease v. City of Anaheim,* 826 F.Supp. 336 (C.D. Cal.1993), involved a facial challenge to permit requirements for adult establishments featuring live entertainment. The ordinance provided that "a conditional use permit shall be granted ... for any use which consists essentially of dissemination of information or other speech or expression" protected by the first amendment, unless information submitted by the applicant or presented at a public meeting would support any one of several findings. *Id.* at 340. If the use would "adversely affect" religious facilities, schools, parks or playgrounds, or the exterior of the building at issue was "inconsistent" with surrounding structures or "insufficiently buffered" from residential areas, a permit need not be granted. The ordinance was invalidated, for its ambiguity gave the planning commission "an unconstitutional amount of discretion whether to grant or deny [a permit], leaving open the possibility of content-based discrimination." *Id.* at 344.

The Benton County code permits the planning commission to consider whether a proposed use is "consistent with the purposes" of the code, whether the use has an "appearance that will not have an adverse effect on adjacent properties", and whether it is "reasonably related" to existing land use. Benton Cty. Dev.Code § 11.6.2. In addition, the code affirmatively states that the commissioners "shall consider the effect of the proposed use on the health, safety, morals and general welfare" of residents. *Id.*

■ Moreover, the code requires the commission to make findings only "where applicable." *Id.* It does not limit the nature of the findings or require officials to state them with specificity. Nothing in the language of the code prevents the planning commission from denying a permit on the basis of the content of the applicant's speech after making a vague finding that a proposed use is "inconsistent with the purposes of the development code" or "not reasonably related to existing uses," or even "adverse to the morals and general welfare" of county residents.

Under the standard of *City of Lakewood,* 486 U.S. at 769–72, 108 S.Ct. at 2150–52, and *Dease,* 826 F.Supp. 336, the code is unconsti-

**5.** The Supreme Court defines "well established practice" as "a well understood and uniformly applied practice [with] virtually the force of a judicial construction." *City of Lakewood,* 486 U.S. at 770 n. 11, 108 S.Ct. at 2151 n. 11.

Defendant has not made a showing that the actions of city officials are well understood, uniformly applied, or have virtually the force of a judicial construction.

tutional as applied to recreational facilities that enjoy first amendment protection because it affords decision makers discretion to deny a permit based on the content of an applicant's speech.

■ Plaintiff also argues that the statute is unconstitutional because it contains no time limit by which the planning commission must accept or deny a permit application. A regulation that allows officials prior restraint over protected activity must be carefully circumscribed:

> the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied.

*FW/PBS*, 493 U.S. at 228, 110 S.Ct. at 606; *see also Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

In *FW/PBS* the Supreme Court examined adult business permit requirements imposed by the city of Dallas, Texas. The city required the chief of police to approve the issuance of a license for an adult business within thirty days of application if the business was also approved by city health and fire departments and building officials. The ordinance did not set time limits for inspections required to ensure such approval. The Court struck down the ordinance because it failed to limit effectively the time within which the licensor's decision must be made.[6] *Id.* at 229, 110 S.Ct. at 606.

■ The Benton County code provides even fewer procedural safeguards than the ordinance at issue in *FW/PBS*. It provides no deadline by which an application must be granted or denied. Officials are therefore free to drag out the permit process indefinitely. It creates further delay by prohibiting an applicant who has been denied from applying again for six months. Benton Cty. Dev.Code § 11.8. Moreover, the code fails to meet the second requirement under *FW/PBS*, because it does not maintain the status quo while a decision is pending. *See FW/PBS*, 493 U.S. at 228, 110 S.Ct. at 606; *Chesapeake B & M*, 831 F.Supp. at 1249; *Wolff*, 803 F.Supp. at 1574 (striking down city ordinance licensing adult entertainment because it did not allow adult businesses to remain open pending a license decision). The code prohibits operation of a "recreational facility" without a permit. While decision on a permit is pending, operation of the facility is prohibited under threat of civil and criminal sanctions.

The development code lacks the procedural safeguards required by *FW/PBS*, and therefore is unconstitutional as applied to "recreational facilities" that enjoy first amendment protection.

■ Plaintiff seeks an injunction preventing enforcement of the code against it. Defendant argues an injunction is not warranted under the circumstances. A party seeking a permanent injunction must show that following factors favor issuance of the injunction:

1) the threat of irreparable harm;

2) that this harm outweighs any injury that granting the injunction will inflict on the other party;

3) that the movant has met its burden of prevailing on the merits; and

4) that the public interest favors an injunction.

---

**6.** See also *Chesapeake B & M, Inc. v. Harford Cty., Maryland*, 831 F.Supp. 1241 (D.Md.1993), involving an adult bookstore owner's facial challenge to the county's licensing system on the ground that it failed to limit the time afforded to decision makers. The challenged ordinance required the county licensing department to request a health department *inspection within seven days* of an application and to refer the application to any other agency from whom the licensing department needed additional information. The health department and other agencies were given thirty days within which to complete the inspection and gather any necessary information. Within seven days of receipt of the information the license department was required to notify the applicant whether it qualified for a permit.

The district court struck down the ordinance because it failed to offer effective time limits on the application process. The ordinance did not waive the licensing department's right to review requested information if an agency failed to meet the thirty day deadline. *Id.* at 1249. As a result, the permit process could be delayed indefinitely.

**1154**

*C.f. General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 624 (8th Cir.1987); *Dataphase Sys. v. C.L. Sys.*, 640 F.2d 109, 114 (8th Cir.1981).

 Defendant asserts that there is no danger of criminal prosecution for violations of the code, and therefore no threat of irreparable harm. It argues that city officials contemplated only a civil enforcement action, not criminal prosecution. The code explicitly authorizes prosecution of violations, however. Benton Cty. Dev.Code § 11.10.1. Nothing prevents defendant from taking such action absent a permanent injunction. Plaintiff has shown the threat of irreparable harm.

The balance of harms also favors plaintiff. It has a strong interest in engaging in activity protected by the first amendment. Defendant has a substantial and legitimate interest in enforcing its zoning regulations. This interest does not extend, however, to enforcement of an unconstitutional statute.

 Plaintiff has demonstrated that the code is unconstitutional as applied to it, so the third factor favors injunctive relief. Finally, the public interest favors preventing enforcement of an ordinance that unconstitutionally restrains protected expression. A permanent injunction preventing application of § 11.2 of the development code to uses that are protected under the first amendment is the appropriate remedy under these circumstances.

### ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1) the motion of the plaintiff for summary judgment is granted, and that of the defendant is denied; and

2) defendant and its agents, officers, employees, and persons acting under its direction and control, are permanently enjoined from enforcing Benton County Development Code § 11.6 against plaintiff or others seeking to operate live theatres, cinemas and other first amendment protected "recreational facilities" within the meaning of the Benton County Development Code.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**