CHESAPEAKE B & M, INCORPORAT-
ED, t/a Highway Craft, Gift & Book
Store, Plaintiff–Appellant,

v.

HARFORD COUNTY, MARYLAND,
Defendant–Appellee.

No. 94–1270.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1995.

Decided July 5, 1995.

**ARGUED:** Howard J. Schulman, Baltimore, MD, for appellant. Diane Theresa Swint, Harford County Dept. of Law, Bel Air, MD, for appellee. **ON BRIEF:** Jefferson L. Blomquist, Harford County Dept. of Law, Bel Air, MD, for appellee.

Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, MURNAGHAN, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS, MICHAEL, and MOTZ, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Reversed in part, vacated in part, and remanded by published opinion. Circuit Judge MICHAEL wrote the majority opinion, in which Chief Judge ERVIN and Judges MURNAGHAN, WILKINSON, WILKINS, HAMILTON, LUTTIG, WILLIAMS and MOTZ joined. Judge NIEMEYER wrote a dissenting opinion, in which Judges RUSSELL and WIDENER and Senior Judge CHAPMAN joined.

## OPINION

MICHAEL, Circuit Judge:

This 42 U.S.C. § 1983 case involves an adult bookstore's First and Fourteenth Amendment facial challenge to a Harford County, Maryland, ordinance that licenses and regulates adult bookstores. The district court held that the ordinance is an unconstitutional prior restraint on speech insofar as it fails to ensure that licensing officials will issue or deny a license within a reasonable time and fails to maintain the status quo for existing bookstores during the application process. The district court rejected the bookstore's other constitutional claims. The bookstore appeals, arguing that the district court erred in holding that the ordinance provides for prompt judicial review of licensing decisions, sufficiently fetters the discretion of licensing officials and is otherwise narrowly tailored. Our principal conclusion is that the County has not provided for prompt judicial review, and we reverse the district court's judgment on that issue. We do not reach the merits of the bookstore's other First Amendment claims.

### I.

#### A.

On May 11, 1992, the Harford County Council (Council) enacted Bill No. 92–27, the Adult Bookstore Licensing Law (Licensing Law), to license and regulate adult bookstores, as defined in the Licensing Law. The Licensing Law was designed to protect the health, safety and welfare of the County's citizens by minimizing the undesirable secondary effects generally associated with sexually oriented businesses. The Council found that such businesses frequently are used for unlawful sexual activities, may facilitate the transmission of sexual diseases, contribute generally to crime, decrease property values and adversely impact the quality of life in their surrounding areas.

The Licensing Law makes it unlawful to operate an adult bookstore in the County without a license issued by the County's Department of Inspections, Licenses and Permits (Licensing Department). To get a license one must complete an application and disclose to the Licensing Department certain information, some of which is fairly personal. For example, an applicant must provide the name, address and date of birth of all employees who will work in the bookstore. If the applicant is a corporation, it must submit a copy of its articles of incorporation and bylaws and the name and address of each person holding at least a ten percent interest. The applicant must submit to a criminal background check. Additionally, the applicant must inform the Licensing Department whether the applicant, the applicant's spouse, any person with whom the applicant resides, any employee who will work in the bookstore, or any person who owns at least a ten percent interest in the applicant has been convicted for one of thirty-two Maryland crimes enumerated in the Licensing Law.

Once an application is received, the Licensing Department must request within seven days an inspection from the County's Health Department and refer the application to any governmental agencies that might have information relevant to the application. These

agencies and the Health Department are supposed to report back to the Licensing Department within thirty days. Within the next seven days the Licensing Department must notify the applicant whether a license will be issued. Thus, the Licensing Law contemplates that the Licensing Department will grant or deny a license within 44 days after it receives an application.

The Licensing Department may deny a license for a variety of reasons. For instance, a license may be denied if an applicant bookstore fails a health inspection, or if the applicant, the applicant's spouse, or a person with whom the applicant resides has been convicted within the preceding two years of one of the thirty-two enumerated crimes.[1] If a license is issued, it lasts for one year and may be renewed annually.

Once an adult bookstore is operating, the Licensing Department may suspend or revoke the bookstore's license for any reason that might serve as the basis for the initial denial of a license. In addition, the Licensing Department may suspend or revoke a license for a variety of other reasons, for instance, if the licensee or an employee of the licensee refuses to allow an inspection by government officials, or if within a one-year period at least two book store employees get convicted for one of the thirty-two enumerated crimes.

In addition to the Licensing Department's power to suspend and revoke a license, the Licensing Law contains a penalty provision. Those who violate any provision of the Licensing Law are guilty of a misdemeanor and may be fined up to $1,000 or imprisoned up to six months, or both, with each day of violation constituting a separate offense.[2]

### B.

Chesapeake B & M, Incorporated, t/a Highway Craft, Gift & Book Store (Highway Craft), operates an adult bookstore in the County. It was one of four adult bookstores in operation when the Licensing Law became effective on July 10, 1992. Adult bookstores in operation on that date had 45 days to apply for a license under the new law. Highway Craft did not apply, but filed this 42 U.S.C. § 1983 action on July 23, 1992, to challenge the Licensing Law under various provisions of the United States Constitution.

Highway Craft's complaint alleged that the Licensing Law violates the free speech clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, on the grounds that it is an impermissible prior restraint on speech and that it is not narrowly tailored to minimize the incidental impact on protected expression. Highway Craft further alleged that the Licensing Law's random inspection provision (adult bookstore operators must allow officials to inspect the bookstores whenever they are occupied or open for business) violates the First and Fourth Amendments, made applicable to the states through the Fourteenth Amendment. Finally, Highway Craft alleged that the Licensing Law's civil disability provisions violate the Ex Post Facto and Bill of Attainder Clauses. U.S. Const. Art. I, § 10. The complaint sought declaratory and injunctive relief.

On the parties' cross-motions for summary judgment, the district court issued a memorandum opinion and order on August 25, 1993. With respect to Highway Craft's First Amendment challenges, the court concluded that Highway Craft had raised a facial challenge and that it had standing to do so. The court next concluded that the Licensing Law targets the noncommunicative aspects of protected speech, specifically the undesirable

---

1. Provisions that prohibit one from operating a sexually oriented business because of past crimes are commonly referred to as "disability provisions." Most of the thirty-two crimes listed in the Licensing Law involve either obscenity, sexual activity, or harm to children. However, some of the crimes listed do not appear to involve any of these concerns (e.g., bribery of a public official, intimidation of a juror, obstruction of justice, and copyright infringement).

2. The Licensing Law contains a host of other, more familiar, regulatory provisions. For example, it prohibits adult bookstores from locating within 1,000 feet of certain places (e.g., houses of worship), regulates the interior design of adult bookstores, sets out requirements for lighting and viewing booths, and prohibits sexual acts, the admission of minors and obscene performances inside adult bookstores.

secondary effects associated with sexually oriented businesses, and therefore should be analyzed as a content-neutral time, place and manner restriction.

In the context of determining whether the Licensing Law is narrowly tailored to serve the County's substantial interest in eradicating the undesirable secondary effects, the district court shifted to a prior restraint analysis. Citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the court noted that a licensing scheme impacting protected expression must (1) impose adequate standards to guide the discretion of licensing officials, (2) ensure an administrative decision on the license application within a reasonably brief time during which the status quo is maintained, and (3) provide for prompt judicial review. The district court found the Licensing Law unconstitutional because it does not ensure a reasonably prompt administrative decision and fails to preserve the status quo for existing adult bookstores during the application process.[3] The County does not cross-appeal these rulings.[4]

The district court rejected Highway Craft's other constitutional claims, however. Of significance for this appeal, the court held that the Licensing Law does not vest licensing officials with unbridled discretion to suppress speech and that it adequately provides for prompt judicial review of licensing decisions.

Highway Craft appealed to this court, arguing that the Licensing Law (1) does not impose adequate standards to limit the discretion of County officials involved in the licensing process, (2) does not adequately provide for prompt judicial review, and (3) is not otherwise narrowly tailored to serve any substantial governmental interest. A panel of this court heard argument on July 13, 1994, and decided, two-to-one, to affirm. However, the panel withheld publication of an opinion in view of the potential conflict with *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 32 F.3d 109 (4th Cir. 1994), a reported decision by a different panel on the meaning of prompt judicial review.

Because of the conflict between the panels, our court issued an order on November 2, 1994, vacating both panel decisions and scheduling both cases for rehearing en banc. The order explained that "the court has particular interest in the issue common to both cases of what is required to meet the requirement that 'expeditious judicial review ... must be available,' *see FW/PBS, Inc. v. Dallas*, 493 U.S. 215, [227, 110 S.Ct. 596, 605, 107 L.Ed.2d 603] (1990), and whether the ordinances involved in these cases meet that requirement." All issues, however, were open for reargument.

## II.

### A.

Although the County does not raise the issue, we must first determine whether Highway Craft may bring a facial challenge to the Licensing Law. The Licensing Law is directed at bookstores that sell non-obscene adult material and thereby engage in activity protected by the First Amendment. "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988). Unbridled discretion naturally exists when a licensing scheme does not impose adequate standards to guide the licensor's discretion.

---

3. Specifically, although the Licensing Law purports to limit to 44 days the period for administrative review of a license application, the 44-day limit assumes that the Health Department and other agencies will report back to the Licensing Department within 30 days. The district court found, however, that the Licensing Law does not guarantee this. Consequently, any delay by the Health Department or other agencies could delay indefinitely the licensing decision. As for preserving the status quo, the district court found that the Licensing Law does not provide that existing bookstores may continue to operate during the application process.

4. The County informs us that it has since amended the Licensing Law to correct the deficiencies found by the district court. The amendment is not before us in this appeal.

Also, as we note today in *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58 F.3d 988 (4th Cir. 1995) (en banc), unbridled discretion exists when a licensing scheme lacks adequate procedural safeguards to ensure a sufficiently prompt decision. *See FW/PBS*, 493 U.S. at 223, 226–27, 110 S.Ct. at 603, 605–06 (plurality opinion) (citing *Freedman v. Maryland*, 380 U.S. 51, 56–57, 85 S.Ct. 734, 737–38, 13 L.Ed.2d 649 (1965)). Here, Highway Craft alleged that the Licensing Law fails to ensure expeditious decision making. The district court agreed, holding that "the ordinance lacks specific time limits" and "allows the Licensing Department to delay the process." *Chesapeake B & M, Inc. v. Harford County, Md.*, 831 F.Supp. 1241, 1253 (D.Md.1993). Thus, a facial challenge is proper here. *See FW/PBS*, 493 U.S. at 223–24, 110 S.Ct. at 603–04 ("where a scheme creates a '[r]isk of delay,' such that 'every application of the statute create[s] an impermissible risk of suppression of ideas,' we have permitted parties to bring facial challenges" (citations omitted)).

### B.

■ The First Amendment standards implicated here are well established. A governmental entity may regulate sexually oriented businesses, including adult bookstores, in an effort to address the undesirable secondary effects associated with them. We treat such regulations as content-neutral because they are justified without reference to the content of the impacted speech. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986). They generally will be reviewed under the standards applicable to content-neutral restrictions that impose an incidental burden on speech. *Id.* at 46–50, 106 S.Ct. at 928–30; *Wall Distribs., Inc. v. City of Newport News, Va.*, 782 F.2d 1165, 1168 (4th Cir.1986); *see Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753,

105 L.Ed.2d 661 (1989) (time, place and manner); *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968) (expressive conduct). The key inquiry is whether the regulations (1) are narrowly drawn to serve a substantial governmental interest and (2) allow for ample alternative avenues of communication.

■ However, as we explain more fully today in *11126 Baltimore Blvd., supra*, licensing schemes directed at sexually oriented businesses engaged in protected expressive activity pose special problems because of the risks of censorship and suppression associated with prior restraints on speech. When the government uses a licensing scheme, two procedural safeguards are required to ensure expeditious decision making: (1) definite and reasonable limitations on the time within which the licensor must decide whether to issue a license and during which the status quo must be maintained and (2) prompt judicial review.[5] In addition, such a licensing scheme must impose narrow and objective standards to limit the discretion of licensing officials. In this appeal Highway Craft argues that the Licensing Law is an unconstitutional prior restraint on speech because it neither provides for prompt judicial review nor imposes adequate standards to guide the discretion of licensing officials.

### C.

■ Before we can address Highway Craft's claim that the Licensing Law constitutes an impermissible prior restraint, we must note the awkward posture of this case as it comes to us. Highway Craft is appealing certain rulings of the district court relating to the constitutional adequacy of the licensing scheme. Yet at first glance it appears that Highway Craft won below. The district court held that the licensing scheme fails to ensure an administrative decision within a reasonably brief time, and the Coun-

---

5. These two safeguards were set forth in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *Freedman* identified a third safeguard: the censor must bear both the burden of going to court and the burden of proof once in court. *Id.* at 58–60, 85 S.Ct. at 738–40. As we observe today in *11126 Baltimore Blvd.*, "[t]he

splintered opinion of the *FW/PBS* Court leaves the continued application of the third *Freedman* factor subject to some speculation." 58 F.3d at 996 n. 12. Because Highway Craft has not invoked the third *Freedman* safeguard, we need not address whether it applies.

ty is not cross-appealing that ruling. As a general rule a prevailing party cannot appeal from a district court judgment in its favor. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 333, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980).

■ But a closer look at the district court's order reveals that Highway Craft was indeed aggrieved by the judgment below. Although the district court held that the licensing scheme is constitutionally deficient because it lacks an essential procedural safeguard, the court suggested that the licensing provisions could be enforced nevertheless and ordered that Highway Craft "may file for injunctive relief in the event it deems such relief necessary or appropriate." *Chesapeake B & M*, 831 F.Supp. at 1253. Likewise, in its subsequent memorandum opinion denying Highway Craft's motion to amend the judgment, the court suggested that, although the constitutional deficiency here (the absence of a procedural safeguard) is not severable, the County could still apply the Licensing Law, and Highway Craft could file for injunctive relief if the County were not to issue a license within a reasonably brief time. *Chesapeake B & M, Inc. v. Harford County, Md.*, Civ. No. B–92–2049, 1994 WL 840954, at 2–3 (D.Md. Jan. 26, 1994). Because the district court's order suggests that the County can enforce the licensing scheme despite its constitutional infirmity, the scope of the Licensing Department's discretion and promptness of judicial review remain of consequence, and Highway Craft was aggrieved by the judgment below.

■ That being said, we must express disagreement with how the district court disposed of this case. The court held that the licensing scheme, on its face, poses the risk that protected expression will be suppressed for an indefinite time before an administrative decision (and, it follows, before a judicial decision, *see infra* note 6). However, notwithstanding this risk of indefinite delay, the court ruled that the licensing scheme is enforceable because, the court suggested, the Licensing Department *might* decide within a reasonably brief time whether to issue or deny a license. Put another way, the court apparently thought it determinative that the licensing scheme *could* be applied in a consti-

tutional manner. But "[w]e cannot depend on the individuals responsible for enforcing the Ordinance to do so in a manner that cures it of constitutional infirmities." *Redner v. Dean*, 29 F.3d 1495, 1501 (11th Cir. 1994) (holding that the ordinance on its face failed to impose reasonable time limits on the administrative process), *cert. denied*, —— U.S. ——, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995). We find no support in the Supreme Court's cases for the proposition that a licensing scheme that lacks an essential procedural safeguard—and thus constitutes an impermissible prior restraint—may nevertheless be enforced and challenged only on an "as applied" basis. Indeed, the Court's cases clearly suggest otherwise. *See, e.g., Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 317, 100 S.Ct. 1156, 1162, 63 L.Ed.2d 413 (1980) (per curiam) (lack of procedural safeguards "precludes the enforcement" of statute). In short, the licensing scheme is unenforceable because it does not ensure a prompt administrative decision, and we must vacate the district court's order to the contrary.

### D.

Because the licensing scheme is unenforceable, it appears (at first blush) that we do not need to reach the merits of either of Highway Craft's arguments for invalidating the licensing scheme as an impermissible prior restraint: (1) lack of prompt judicial review and (2) inadequate standards to guide the discretion of licensing officials. Indeed, we will not reach the second. *See Riley v. National Fed'n of the Blind*, 487 U.S. 781, 802 & n. 14, 108 S.Ct. 2667, 2680 & n. 14, 101 L.Ed.2d 669 (1988) (because the licensing scheme was unconstitutional—it did not ensure an administrative decision within a specified, brief time—the Court said there was no need to decide whether the licensor had unbridled discretion to grant or deny a license). We will, however, address whether the County has provided for prompt judicial review, and we do so to be consistent with the Supreme Court's licensing cases. *See FW/PBS, supra; Blount v. Rizzi*, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971); *Teitel Film Corp. v. Cusack*, 390 U.S. 139, 88 S.Ct. 754,

19 L.Ed.2d 966 (1968) (per curiam); *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In each of these cases the Court reviewed the adequacy of each procedural safeguard.

■ The district court held that the Licensing Law adequately provides for prompt judicial review because it allows an applicant or licensee to appeal to the Circuit Court for Harford County in the event the Licensing Department denies, suspends or revokes a license. The court said that "[t]he County has no further obligation to set time limits on judicial review." *Chesapeake B & M,* 831 F.Supp. at 1250.[6] Highway Craft contends that "prompt judicial review" requires more than prompt access to the judiciary. Highway Craft argues that the County must ensure a sufficiently prompt judicial decision on the merits. For the reasons announced today in our en banc opinion in *11126 Baltimore Blvd., supra,* we agree that prompt judicial review means a sufficiently prompt decision on the merits. Therefore, we reverse the district court's judgment on this issue.[7]

### E.

■ Although the County's licensing scheme is an unconstitutional prior restraint on protected speech, there are some regulatory provisions in the Licensing Law that appear unrelated to the licensing process and might be capable of functioning independently from the licensing scheme (*e.g.,* the operating requirements in § 58–7, the additional requirements in § 58–8 and the obscene public performance ban in § 58–12). Because the Licensing Law contains a severability clause, we remand to the district court to determine whether and to what extent the licensing scheme is severable from the remainder of the Licensing Law. *See FW/PBS,* 493 U.S. at 230, 110 S.Ct. at 607 (remanding for severability determination); *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 1479, 94 L.Ed.2d 661

---

6. The district court's conclusion that the Licensing Law provides for prompt judicial review is curious in light of its finding that the administrative process could be delayed indefinitely. In the event of such delay, the judicial review provision would not be triggered. *See Redner,* 29 F.3d at 1502 (the ordinance was "inadequate under any interpretation of 'prompt judicial review'" because, without definite time limits on the administrative process, "expressive activity could be suppressed indefinitely prior to any judicial review").

7. It is perhaps appropriate at this point to respond to the dissenting opinion.

The dissent reluctantly concedes that the Licensing Law imposes a prior restraint on protected speech. *See post* at 1019–20, 1020. Nevertheless, the dissent contends that procedural safeguards are not required for all prior restraints. We cannot agree. The Supreme Court has made clear that any system of prior restraint must place adequate time limits on the decisionmaking process. *FW/PBS,* 493 U.S. at 226, 110 S.Ct. at 605. The dissent fails to recognize that the procedural safeguards are designed to ensure this requirement of expeditious decision making. *See id.* at 227, 110 S.Ct. at 605 ("In *Freedman,* we determined that the following three procedural safeguards were necessary to ensure expeditious decisionmaking by the [licensor]...."). In short, "[t]he core policy underlying *Freedman* is that the license for a First Amendment-protected business *must be issued within a reasonable period of time,* because undue delay results in the

unconstitutional suppression of protected speech. Thus, the first two safeguards [time limits on licensor and prompt judicial review] *are essential* ...." *Id.* at 228, 110 S.Ct. at 606 (emphases added).

Contrary to the Supreme Court, the dissent posits a theory that the procedural safeguards do not come into play unless an ordinance is found to contain one of "two evils": (1) "unbridled discretion in the duration of the licensor's decision" or (2) "unbridled substantive discretion in the licensor's application of its decisionmaking criteria." *Post* at 1019. But the presence of one of these two "evils" would be enough by itself to invalidate an ordinance. Therefore, the dissent's approach would effectively render the safeguards meaningless: they would be required only for those ordinances that are already invalid.

Finally, we note that the dissent does not faithfully apply its approach to the facts of this case. The dissent says safeguards would be required if the Licensing Law conferred "unbridled discretion on ... the duration of the decision-making process," *id.* at 1020, but concludes it does not. That conclusion, however, flies in the face of the district court's holding, *unchallenged by the County,* that the "the ordinance lacks specific time limits" and "allows the Licensing Department to delay the process." *Chesapeake B & M, Inc.,* 831 F.Supp. at 1253. The dissent appears to get around this by invoking the amendments to the Licensing Law. *See post* at 1019 n. 3. But the amendments were not before the district court and are not before us in this appeal.

(1987) (standards for severability determination).

## III.

■■■ Highway Craft next urges as a separate matter that the Licensing Law is not narrowly tailored to serve the County's interest in minimizing the undesirable secondary effects associated with sexually oriented businesses. Highway Craft complains that the district court never addressed this issue because the court erroneously suggested that the narrow tailoring analysis is limited to a determination whether the requirements of *FW/PBS* (fettered discretion and procedural safeguards) are satisfied. To the extent the court so suggested, it erred. The "intermediate scrutiny" analysis applicable to content-neutral restrictions on speech is distinct from the prior restraint analysis we discussed in Part II, *supra*. See *11126 Baltimore Blvd.* (en banc), *supra; Wall Distribs.,* 782 F.2d at 1170. The latter is concerned with the risks of censorship and delay when the enjoyment of protected expression is contingent upon obtaining permission from government officials; the former is concerned with the ends government can pursue, the means with which it can pursue those ends, and the relationship between them. A licensing scheme may adequately fetter the licensor's discretion and provide adequate procedural safeguards yet contain specific licensing or regulatory provisions that do not further a substantial governmental interest (*e.g.,* an outrageously high licensing fee or an unreasonable restriction on the hours of operation).

■■■ Highway Craft's conclusory argument on narrow tailoring appears to challenge only the disclosure provisions, which require applicants and licensees to disclose to the Licensing Department certain background and personal information, and the civil disability provisions, *see supra* note 1. We will limit our discussion to these provisions because Highway Craft has not pointed us or the district court to any others it believes are not narrowly tailored.[8]

As for the disclosure provisions, we need not decide whether they are narrowly tailored, for they are intimately tied in with the licensing scheme we have today invalidated for lacking the essential procedural safeguards. See *FW/PBS,* 493 U.S. at 236 n. 3, 110 S.Ct. at 610 n. 3 (in light of its conclusion that the licensing requirement was unconstitutional because it lacked essential procedural safeguards, the Court said it would not reach petitioners' other First Amendment challenges to the licensing scheme); *id.* at 243, 110 S.Ct. at 614 (Brennan, J., concurring in the judgment) ("since the Court invalidates the application of the entire Dallas licensing scheme to any First Amendment-protected business under the *Freedman* doctrine, it is unnecessary to decide whether some or all of the same provisions are also invalid ... on other grounds").

■■■ As for the civil disability provisions, Highway Craft has failed to show that it has standing to challenge them. Highway Craft focuses on the provision that says an applicant convicted for one of the thirty-two enumerated Maryland crimes cannot operate an adult bookstore for two years. "To establish standing to challenge that provision [Highway Craft] must show both (1) a conviction of one or more of the enumerated crimes, and (2) that the conviction ... occurred recently enough to disable the applicant under the ordinance." *Id.* at 234, 110 S.Ct. at 609. Highway Craft's complaint alleged that, as of May 11, 1992, the date the Licensing Law was enacted, all four adult bookstores then existing in the County, in-

---

**8.** Highway Craft's brief also makes a general assertion (without citation to authority) that the County relied on no evidence during the enactment proceedings to show that the Licensing Law would serve an important state interest. In this connection, it complains that the random inspection requirement has no "independent basis" in the legislative record, which was not before the court below. These claims have no merit. *See Renton,* 475 U.S. at 50–52, 106 S.Ct. at 930–31; *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 567–68, 111 S.Ct. 2456, 2460–62, 115 L.Ed.2d 504 (1991) (plurality opinion); *id.* at 582, 111 S.Ct. at 2468 (Souter, J., concurring in the judgment); *Wall Distribs.,* 782 F.2d at 1169 & n. 7; *Hart Book Stores, Inc. v. Edmisten,* 612 F.2d 821, 828–29 (4th Cir.1979), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980).

cluding Highway Craft, had been convicted for one of the enumerated crimes (a Maryland obscenity law). But the record does not confirm when (or even whether) Highway Craft was in fact convicted for one of the enumerated crimes. As the Supreme Court emphasized in *FW/PBS*, "It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" *Id.* at 231, 110 S.Ct. at 608 (citations omitted). And "'the necessary factual predicate may not be gleaned from the briefs and arguments themselves.'" *Id.* at 235, 110 S.Ct. at 610 (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 547, 106 S.Ct. 1326, 1334, 89 L.Ed.2d 501 (1986)).[9]

Because Highway Craft has not established that it has standing to challenge the disability provisions, the district court below lacked jurisdiction to adjudicate Highway Craft's claims with respect to those provisions, namely the bill of attainder and ex post facto claims. Accordingly, we must vacate that portion of the district court's judgment dealing with the disability provisions. *See id.* at 235–36, 110 S.Ct. at 609–10 (vacating judgment below for lack of standing).

## IV.

We hold that the County has not provided for prompt judicial review, and we reverse the district court's judgment to the contrary. Moreover, we hold that, because the licensing scheme lacks essential procedural safeguards, it is an unconstitutional prior restraint on protected speech. As such, it is unenforceable, and we vacate the district court's order insofar as it holds otherwise.

Furthermore, we hold that Highway Craft lacks standing to challenge the disability provisions, and we vacate that portion of the district court's judgment relating to those provisions (the bill of attainder and ex post facto claims). Finally, we remand to the district court to decide whether and to what extent the invalid licensing scheme is severable.

*REVERSED IN PART, VACATED IN PART, AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.*

NIEMEYER, Circuit Judge, dissenting:

In this case and the related case of *11126 Baltimore Boulevard, Inc. v. Prince George's County, Md.*, 58 F.3d 988 (4th Cir.1995), both decided today, the majority opinions have stricken down as unconstitutional ordinances enacted by two Maryland counties to regulate the secondary effects of adult bookstores whose business is to sell sexually explicit materials and to provide sexually oriented entertainment. These ordinances do not *directly* prohibit the sale of sexually explicit material; rather they prohibit any "adult bookstore," as defined in each ordinance, from conducting business without first obtaining a license (a "permit" in Harford County and a "special exception" in Prince George's County).

The ordinance before us in this case does not confer unbridled discretion upon the licensor to deny a permit to a qualifying adult bookstore and therefore does not warrant the procedural safeguards prescribed in *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).[1] Furthermore,

---

**9.** We note that even if the record had supported Highway Craft's allegation that it has standing to challenge the disability provisions, it would be unnecessary for us to reach the merits. The disability provisions, like the disclosure provisions mentioned above, are an integral part of the unconstitutional licensing scheme. Of the six Justices in *FW/PBS* who voted to invalidate the licensing scheme there, three opined that it was unnecessary to reach the constitutionality of the disability provisions once it was determined that the licensing scheme lacked the essential procedural safeguards. 493 U.S. at 242–44, 110 S.Ct. at 613–15 (Brennan, J., concurring in the judgment) (emphasizing that reaching the disability

provisions was "unnecessary to the decision" and "superfluous" since "the Court invalidate[d] the application of the entire Dallas licensing scheme to any First Amendment-protected business under the *Freedman* doctrine").

**1.** While the majority chooses to characterize the Harford County ordinance as imposing a direct prior restraint on speech, I do not share that view. The legislation's prohibition is directed only against conducting an adult bookstore *business* without a permit, and only through the permitting process does it indirectly impose a prior restraint on speech. It is precisely because the legislation's effect only incidentally burdens

this ordinance is a content-neutral "time, place and manner" regulation adopted to address the secondary effects of adult bookstores, warranting affirmance under the jurisprudence of *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

Even if prompt access to judicial review of a permit denial is a required safeguard under *FW/PBS*, as the majority maintains, I would interpret that safeguard as requiring only that exit from the executive branch (the administrative licensing system) be prompt and that access to the judicial system be immediately available. Since the nature of the safeguard is *access* to a court, and not the rendering of any given decision of the court, I cannot subscribe to the position that the procedural safeguard requires prompt *completion* of the judicial review any more than it requires a particular result. At least three

other circuits share this view. *See Grand Brittain, Inc. v. City of Amarillo*, 27 F.3d 1068 (5th Cir.1994); *TK's Video v. Denton County*, 24 F.3d 705 (5th Cir.1994); *Graff v. Chicago*, 9 F.3d 1309 (7th Cir.1993) (en banc); *Jews for Jesus v. Massachusetts Bay Trans. Author.*, 984 F.2d 1319 (1st Cir.1993). *Cf. O'Connor v. City and County of Denver*, 894 F.2d 1210 (10th Cir.1990) (declining to apply *FW/PBS* safeguards where it found adult entertainment licensing scheme imposed no restraint and where plaintiff theater was closed because of significant number of acts of public indecency).

In any event, in this case the Maryland Rules provide for a prompt judicial decision.

## I

The County Council of Harford County, Maryland, enacted Bill No. 92–27, known as the Harford County Adult Bookstore Licensing Law, on May 11, 1992, to address the

---

speech through the permit requirement that we need not apply the procedural safeguards prescribed by *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (addressing *direct* prior restraints on speech). Ordinances of the type involved here are measured by whether they grant the licensor so much discretion that an exercise of discretion could mask an improper direct restraint on speech.

The majority also misunderstands my analysis of the Supreme Court's holdings on prior restraints. What I demonstrate is that if there is no unbridled discretion in the duration of the administrator's decisionmaking process *and* there is no unbridled substantive discretion in the decisionmaker's application of its decisionmaking criteria, then even if there were no prompt judicial review, the ordinance would not be constitutionally infirm. Similarly, when an ordinance embodies discretion—either substantive or temporal—in administrative decisionmaking, it is not thereby automatically rendered infirm. For example, in *Freedman*, the Court made clear that prompt judicial review of the substantive discretion inherent in the censorship of obscene material would suffice to render the ordinance therein constitutional. In other words, the Supreme Court has required prompt judicial review of administrative decisions only where those decisions embodied discretion in the scope *or* duration of the decisionmaking process, but not where the administrative decisionmaking was nondiscretionary in scope and duration. *See, e.g., Freedman* (unbridled discretion in substantive scope and time frame of decisionmaking); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (unbridled

discretion in scope of decisionmaking); *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (same); *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (unbridled discretion in time frame of decisionmaking); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (same). Thus, the Supreme Court has never held that prompt judicial review is required in a case such as the instant one in which the administrative decisionmaker's discretion was cabined both substantively and temporally. *Cf. Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (statute embodying no substantive discretion upheld against First Amendment attack).

Finally, the majority has misunderstood my application of *FW/PBS* by pointing out that the ordinance in this case affords too much discretion by failing to constrain adequately the time limits in the permitting process. *See* slip op. 7 n. 7. The district court held that the permit decisionmaking time frame was not adequately limited, but that ruling was not appealed by Harford County. Rather, following the district court's conclusion in that regard, the county imposed a 45–day limit on the permitting process, which the district court had concluded would be reasonable. *See Chesapeake B & M, Inc.*, 831 F.Supp. at 1249. Accordingly, I have therefore not expressed any disagreement with the particular ruling of the district court that the original time for permit processing was unconstrained. Rather, I have assumed that to be a fact since it is not before us. My opinion goes only to the timeliness of access to judicial review.

secondary effects of sexually oriented businesses on the community. In general terms, the ordinance (1) requires persons whose principal business is to sell or rent material depicting or describing sexual activity to obtain a license, and establishes qualifications for becoming a licensee; (2) requires licensees to remain in compliance with specifically identified criminal laws, generally relating to sexual misconduct; (3) imposes location requirements for adult bookstores; (4) directs adult bookstores that include viewing booths or theaters to meet prescribed design and lighting requirements; and (5) subjects persons who violate the statute to a fine not exceeding $1,000 or imprisonment not exceeding six months, or both.

More particularly, the Adult Bookstore Licensing Law requires all "adult bookstores" as defined by the ordinance [2] to apply for licenses within 45 days of the effective date of the ordinance. The undisputed purpose for enacting the ordinance, as found by the district court, was "to prevent prostitution, neighborhood blight, declining property values, and the transmission of sexual diseases." The county relied on "convincing documented evidence" that sexually-oriented businesses adversely affect neighboring property by increasing crime, lowering property values, promoting prostitution and casual sexual liaisons, and increasing the transmission of sexual diseases. The district court held that "[t]he ordinance is thus designed to combat these secondary effects," remaining consistent with its stated intent not "to suppress any speech protected under the First Amendment to the United States Constitution, but to enact a content-neutral law that addresses the adverse secondary effects of sexually-oriented businesses."

To qualify as a licensee under the ordinance, a person must (1) be 18 years old, (2) possess a Maryland trader's license, (3) not have been convicted of any one of a list of specified state crimes principally related to sexual misconduct, (4) possess a retail tax identification number, and (5) provide a business site that conforms to the ordinance. To satisfy the ordinance, a business site must not be located within 1000 feet of another adult bookstore or other specific types of property; it must conform to state health laws; and, if the business is to have viewing booths or an adult theater, it must conform in layout and lighting to requirements of the ordinance.

The application process requires that an applicant submit a completed application, signed under oath, together with a $200 fee. The county's Department of Licensing then submits the application to the health department to inspect for violations of the state health laws and may submit it to other departments to provide the county with "information concerning the application." As originally enacted, the ordinance required the Harford County Department of Licensing to notify the applicant whether he qualifies for a license within seven calendar days *after receiving the information from the agencies* involved in the review process. Following the district court's ruling that this scheme impermissibly left an indefinite time for the approval process, the ordinance was amended to require that the Department of Licensing issue or deny a license within 45 days of receiving the application, but those amendments are not before us. A license may be denied if the applicant fails to qualify, fails to pay the application fee, or engages in fraud in the application process. From a decision denying a license, the applicant is given the right to appeal directly to the Circuit Court for Harford County within 30 days for review of the Department's decision.

The ordinance also regulates the operation of adult bookstores by, among other things, restricting the age and activities of persons who frequent the store, imposing restrictions on those who staff the business, and prohibiting sexual activity on the premises. Finally,

---

**2.** An "adult bookstore" is defined in § 58–1(B) of the ordinance to include every business which, as its principal purpose, sells or rents:

    (1) Books, magazines, periodicals, other printed matter, photographs, films, motion pictures, video cassettes, video reproductions, slides, or other visual representations that

describe or depict a sexual act or depict human genitalia in a state of sexual arousal; or

    (2) Instruments, devices, or paraphernalia designed for use in connection with sexual acts.

the ordinance provides criminal penalties for its violation.

Chesapeake B & M, Inc. is a business in Harford County which the county maintains is an "adult bookstore" within the meaning of the ordinance. Following adoption of the ordinance, Chesapeake B & M filed suit against Harford County for a declaratory judgment that the ordinance is unconstitutional in violation of the First and Fourteenth Amendments and an injunction barring its enforcement. It contended, with a broad, facial challenge to the ordinance, that, among other things, the ordinance imposes a prior restraint on protected speech without adequate safeguards.

On cross motions for summary judgment, the district court declared that the ordinance was unconstitutional in failing to ensure completion of the *licensing* process within a specified time and in failing to maintain the status quo during the application period.

While various steps provided for in the ordinance allowed a total of 44 days, the court observed that the ordinance failed to "anticipate that an agency may not furnish the requested information within the [required] 30–day period." The court concluded that because of this omission, the ordinance allows Harford County to "delay the process by awaiting the recalcitrant agency's input." If the process were limited to the specified 44 days, however, the court concluded that the time period would be reasonable and in conformance with the First Amendment. Following the district court's decision, Harford County amended the ordinance to mandate that a license be issued or denied within 45 days in any case.

The court rejected all other constitutional challenges. It concluded that the ordinance was not primarily aimed at protected speech but at the secondary effects of adult bookstores, and did not grant unbridled discretion to county officials. The court rejected the challenge that the statute did not provide for prompt judicial review of a license denial, concluding that the ordinance, under applicable Supreme Court law, need only provide for the *availability* of prompt judicial review, which was provided by the ordinance. I agree and would therefore affirm.

## II

In *FW/PBS v. Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the Supreme Court held that a Dallas, Texas, ordinance regulating sexually oriented businesses, including adult bookstores, by means of zoning, licensing, inspections, and civil disability provisions, conferred unbridled discretion on the licensor, and thus offended the First Amendment. Justice O'Connor, in an opinion joined by Justices Stevens and Kennedy, explained that "prior restraints" embodying either of the two types of evils of unbridled discretion "will not be tolerated" and will be struck as unconstitutional under the First Amendment.

First, the Court will strike down prior restraints which confer unbridled substantive discretion on the licensor. *See, e.g., FW/PBS,* 493 U.S. at 225–26, 110 S.Ct. at 604–05. For example, where the licensor's decision-making criterion is whether " 'in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that [a parade permit] be refused,' " the Court held that a parade permit ordinance, as written, conferred "virtually unbridled and absolute power" upon the licensor, and offended the First Amendment. *See Shuttlesworth v. Birmingham,* 394 U.S. 147, 150, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). Similarly, in *Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the Supreme Court found that the city mayor's discretion with respect to whether to grant or deny a permit for the placement of newsracks—such that the mayor could deny a permit simply by stating that the permit was not in the public interest—conferred unbridled discretion on the mayor to determine who may or may not speak. The Court noted:

It is apparent that the face of the ordinance itself contains no explicit limits on the mayor's discretion. Indeed, nothing in the law as written requires the mayor to do more than make the statement "it is not in the public interest" when denying a permit application.... To allow these il-

lusory "constraints" to constitute the standards necessary to bound a licensor's discretion renders the guarantee against censorship little more than a high-sounding ideal.

486 U.S. at 769–70, 108 S.Ct. at 2150–51.

Second, the Court will not tolerate prior restraints which confer unbridled discretion as to the *duration or length* of the licensor's decisionmaking process. As Justice O'Connor explained, "[w]here the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of [substantive] unbridled discretion." *FW/PBS*, 493 U.S. at 227, 110 S.Ct. at 605. *See also Freedman v. Maryland*, 380 U.S. 51, 57, 85 S.Ct. 734, 738, 13 L.Ed.2d 649 (1965) (noting that the failure to confine the time within which the licensor must make a decision "contains the same vice as a statute delegating excessive administrative discretion"); *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316, 100 S.Ct. 1156, 1161, 63 L.Ed.2d 413 (1980) (striking down statute on ground that it restrained speech for an "indefinite duration"). Justice O'Connor's opinion in *FW/PBS* found that the city's adult-oriented business regulatory scheme "allow[ed] indefinite postponement of the issuance of a license," 493 U.S. at 227, 110 S.Ct. at 605, and thus embodied a "species of unbridled discretion" antithetical to the protection of First Amendment freedoms, *id.* at 223, 110 S.Ct. at 603.

Where, however, a licensing or permit scheme which regulates speech does not confer either temporal or substantive discretion on the licensor, it does not necessarily offend the First Amendment. As Professor John Calvin Jeffries, Jr., explains in his article "Rethinking Prior Restraint," 92 Yale L.J. 409 (1983):

> [First Amendment-based concerns regarding licensing or "administrative preclearance" requirements] are linked to a single factor, a factor ordinarily determinative of the constitutional fate of preclearance requirements. That factor is discretion. Where broad discretion is left in the hands of executive officials—as in a statute authorizing denial of a permit for very general reasons—the vices described above [e.g.,

unduly broad scope of censorship, removal of the censoring decision from effective public scrutiny, institutional incentives to censor] loom very large indeed. Where, on the other hand, executive discretion is tightly controlled—as in a statute requiring issuance of a permit on specified showings—the problems of preclearance seem relatively less troublesome.

> The dangers of discretion have been emphasized repeatedly by the Supreme Court. Virtually all of the permit decisions [finding such schemes unconstitutional] identify unconstrained executive discretion over speech and related activities as the chief reason for invalidation.... [For example, in *Shuttlesworth* ], in which the Court struck down a law authorizing denial of a parade permit whenever city officials thought that "the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused" .... [t]he Court found this law defective in its failure to provide "narrow, objective, and definite standards to guide the licensing authority." And when such standards are provided (assuming, of course, that they are substantively consistent with the First Amendment), parade permit laws and other kinds of nondiscretionary licensing requirements are routinely upheld [citing *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (upholding rule restricting First Amendment protected activities to certain location at fair) and *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (upholding content-neutral time, place, and manner restrictions on religious parade) ].

*Id.* at 423. Professor Jeffries continues by explaining that judicial supervision of a licensor's decisions is called for in cases where the licensor's decisionmaking criteria themselves are inherently incapable of definition in "narrow, precise, and objective terms" (such as is found in the contours of the Supreme Court's definition of "obscenity"). Thus, where a censor reviews films for their obscene content and makes the decision to censor based on the imprecise constitutional criteria for obscene speech, *see Miller v.*

*California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), it is impossible to eradicate the licensor's discretion from that decision, and judicial supervision of the licensor's inherently discretionary decision is necessary. *See Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). However, when the criteria for administrative decisionmaking are themselves substantively consistent with the First Amendment and do not inherently or as formulated allow for unbridled discretion on the part of the decisionmaker, the "prior restraint" on speech effected by a licensing scheme does not embody any of the dangers which would necessitate heightened procedural safeguards.

For example, if a county were to enact a permit system requiring anyone wishing to partake in a parade to fill out an application stating his name, address, the estimated number of marchers, and whether any of the marchers had been arrested for disorderly conduct in public within the past month, and if the parade permit would be automatically granted within 30 days of application if there were no such arrests and automatically denied within 30 days if there were any such arrests, such a regulatory scheme would not embody either the evil of unbridled discretion in the duration or in the scope of the licensor's decisionmaking. Assuming that the disorderly conduct criterion were a constitutionally valid one, this permit system would not embody an unconstitutional prior restraint and the predicate calling for expeditious judicial review of the licensor's decision would not be present. *Cf. Cox v. New Hampshire,* 312 U.S. 569, 576, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941) (upholding against First Amendment attack convictions for violating state statute prohibiting parade upon public street without a license, where New Hampshire Supreme Court had narrowly construed the statute to limit the discretion of the licensing authority to considerations of time, place, and manner exclusively); *Shuttlesworth v. Birmingham,* 394 U.S. at 154–55, 89 S.Ct. at 940–41 (where state supreme court construed parade ordinance to authorize "no more than the objective and evenhanded regulation of traffic on Birmingham's streets and public ways," the Supreme Court will assume that ordinance as authoritatively construed would pass constitutional muster).

While the Harford County licensing ordinance at issue arguably embodies a prior restraint on protected speech (at least with respect to an adult bookstore's dissemination of non-obscene materials), this ordinance does not embody an unconstitutional prior restraint on speech requiring procedural safeguards because it does not possess either of the two evils of unbridled discretion identified by the Supreme Court.

First, the ordinance does not embody unbridled discretion in the duration of the licensor's decision because the ordinance explicitly requires that an agency grant or deny a license within 44 days.[3] *See, e.g., TK's Video, Inc. v. Denton County, Tex.,* 24 F.3d 705, 708 (5th Cir.1994) (upholding 60–day period for administrative review of licensing application for adult bookstore).

Second, the Harford County ordinance does not confer unbridled substantive discretion in the licensor's application of its decisionmaking criteria. Information which the licensor may consider in making a decision is constrained by § 58–2(A) of the ordinance, which establishes qualifications for a licensee, and by § 58–2(C), which prescribes the information to be included in an application. Section 58–2(A) provides that to qualify as a licensee, an applicant must (1) be 18 years old, (2) have a valid Maryland trading license, (3) not be convicted of specified crimes, (4) have a place of business that conforms in location, layout, and lighting to the specific requirements of the ordinance, and (5) have a retail sales tax identification number. Similarly, § 58–2(C) requires an applicant to provide routine information such as his or her name, address, telephone number, and birthdate. It also requires information about the physical layout of the proposed premises, the identification of employ-

---

3. As we noted above, the district court found a loophole in the mandatory licensing period, prompting it to find that aspect of the ordinance unconstitutional. That loophole has been plugged by a mandatory 45–day limit on the licensing period, which the district court found constitutionally reasonable.

ees, and a statement about the licensee's criminal record.

The particularized nature of the application information and the operating requirements constrain the inquiry of the licensing agency. Nowhere in the ordinance can I find an unconstrained grant of discretion to any agency official that could provide a subterfuge for pretextual license denials. Indeed, the ordinance, in specifying a list of reasons for denying an application, inherently precludes unbridled discretionary decisionmaking on the part of the licensor.[4] Because the Harford County licensing scheme contains sufficiently determinate criteria for the issuance of licenses, it does not confer unbridled discretion on county officials to censor protected speech.

Therefore, although such a scheme may embody a "prior restraint" of sorts, it is not a prior restraint that requires special procedural safeguards because it does not confer unbridled discretion on the licensor with respect to the scope or the duration of the decision-making process. Because the Harford County ordinance does not confer unbridled discretion upon the licensor, in contrast to the licensing scheme at issue in *FW/PBS*, this ordinance need not satisfy the procedural safeguards set forth in Justice O'Connor's opinion. *See Graff*, 9 F.3d at 1329–33 (Flaum, J., concurring) (reasoning that because the factors upon which the permit denials at issue were based provide "definite and finite guidelines" and do not vest the licensor with unbridled discretion, "the Ordinance does not grant to city officials the sort of standardless carte blanche that the Supreme Court has unfailingly condemned ... [and] consequently ... does not implicate the kinds of risks which should necessitate a special provision of judicial review.").

### III

Even if the Harford County ordinance does require special procedural safeguards, the majority overreaches in the type of safeguards it would impose. Beginning with the conclusion that "expeditious judicial review of [the executive's] decision must be available," *see FW/PBS*, 493 U.S. at 227, 110 S.Ct. at 606, the majority opinion errs in interpreting the nature of that safeguard to mean that "expeditious judicial review" requires a "prompt [judicial] decision on the merits." Slip op. at 11. That additional requirement of securing a prompt judicial decision is not, I submit, imposed by *FW/PBS*, is unnecessary in the absence of direct prior restraint of speech, and misconstrues the essence of the safeguard.

First, it must be recognized that *FW/PBS* provides no Court opinion addressing the issue. Justice O'Connor's opinion, on which the majority relies, was joined only by Justices Stevens and Kennedy. While Justices Brennan, Marshall, and Blackmun joined in a separate opinion urging greater protection than that articulated in Justice O'Connor's opinion, they did not join in her opinion.[5] 493 U.S. at 238, 110 S.Ct. at 611. Consequently, the majority can logically claim no greater safeguard than that imposed in Justice O'Connor's opinion.

As Justice O'Connor concluded in *FW/PBS*, a licensing ordinance designed to address the secondary effects of adult oriented businesses need not provide the full procedural safeguards required of a direct censorship law. 493 U.S. at 228, 110 S.Ct. at 611. Such a licensing law impinges only incidentally upon protected speech, because it is aimed at the secondary effects of such speech rather than its content. As Justice O'Connor noted in *FW/PBS*, the licensor need not bear the burden of going to court or the burden of proof once in court. *See* 493 U.S. at 227–

---

4. Section 58–6 of the ordinance authorizes the Department of Licensing to deny a license for the following reasons: (1) the required fee is not paid; (2) the premises do not conform to the requirements of the ordinance; (3) the applicant refuses an inspection of the premises to determine if it conforms; (4) the applicant commits fraud in the application process; or (5) the applicant has been convicted, pled nolo contendere, or received probation before judgment for any of a specified list of state crimes.

5. These justices urged application of the safeguards articulated in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), a position not shared by a majority of the Court. 493 U.S. at 239, 110 S.Ct. at 611.

230, 110 S.Ct. at 605–07. Moreover, an ordinance of the type under consideration there must only provide the "possibility of prompt judicial review," 493 U.S. at 228, 110 S.Ct. at 606, or "an avenue for prompt judicial review," *id.* at 229, 110 S.Ct. at 606. Thus, I conclude from Justice O'Connor's express language that an adult bookstore licensing law that does not impose direct censorship of materials need only provide for prompt *access* to judicial review and need not guarantee a prompt *completion* of the judicial review process.

Since the decision in *FW/PBS*, at least three courts of appeals which have considered the appropriate standard to be applied with respect to judicial review of license denials implicating free speech have reached the same conclusion. *See Graff v. Chicago*, 9 F.3d 1309, 1324–25 (7th Cir.1993) (en banc) (holding that *availability* of state's common law procedure for seeking a writ of certiorari in court to review an administrative agency decision regarding the licensing of sidewalk newsstands is sufficient to meet the *FW/PBS*'s "prompt judicial review" requirement); *TK's Video v. Denton County*, 24 F.3d 705, 709 (5th Cir.1994) (holding that *FW/PBS*'s requirement of "prompt judicial review" is satisfied by "access [to] the courts within a brief period," i.e., by giving the aggrieved party 30 days to appeal to court); *Grand Brittain, Inc. v. City of Amarillo, Texas*, 27 F.3d 1068, 1070 (5th Cir.1994) ("We have interpreted [*FW/PBS*'s "prompt judicial review"] language to require only access to the courts within a specified brief period."). *See also Jews for Jesus v. Massachusetts Bay Transportation Authority*, 984 F.2d 1319, 1327 (1st Cir.1993) (applying *FW/PBS*'s standard to regulations of expressive activity in subway station, and holding that "prompt judicial review" is provided where applicant denied license may appeal denial in court and is granted hearing); *cf. O'Connor v. City and County of Denver*, 894 F.2d 1210 (10th Cir.1990) (declining to apply any of the *Freedman* procedural safeguards (as recast in *FW/PBS* ) to the First Amendment analysis of adult entertainment licensing scheme on the ground that such scheme did not involve prior restraints and was based instead on licensee's failure to prevent patrons' engagement in public sex acts in theater).

Moreover, I believe that the nature of the safeguard—assurance of *the availability* of prompt judicial review—cannot meaningfully be interpreted to include the rendering of a court's decision. The essence of the safeguard is the *review* and not the result. When an executive official is given discretionary authority that can have the effect of censoring protected speech, the executive's decision must be reviewable by the judicial branch, and the promptness of instigating that judicial review is the requisite safeguard. Since there are no external checks on the judiciary's review, the scope of the safeguard of necessity ends with access to the judicial branch. If the judiciary agrees that protected speech has been improperly censored, it can act within hours. On the other hand, if it concludes that the would-be censor acted properly and did not unconstitutionally suppress speech, then its decision ends the matter. While the judiciary may not get it right, its *review*, and not the result it reaches, defines the limit of the safeguard.

Thus, I would conclude that prompt judicial review as a safeguard means prompt *exit* from the executive branch and immediate *entry* into the judicial branch, and I believe that the better reading of *FW/PBS* supports this conclusion.

IV

Even though I am satisfied that the Harford County ordinance meets the requirement of *FW/PBS* of providing prompt *access* to the courts (assuming *arguendo* that the safeguards articulated in *FW/PBS* even apply to the county's nondiscretionary licensing scheme), I note nevertheless that the Maryland Rules provide ample mechanisms for completing any judicial review expeditiously should the need arise. Chesapeake B & M is entitled to appeal to the Harford County Circuit Court on the very day of the agency's decision, and it need not wait until the end of the 30–day period. The record must be filed by the county within 60 days, but the Maryland Rules expressly provide that "the court may shorten or extend the time for transmittal of the record." Md.Rule 7–206(d). And

while a hearing is not routinely scheduled under the Maryland Rules before 90 days after the record is filed, Md.Rule 7–208(b), the court may shorten this time as well. *Id.*

In addition to the specific procedural rules applicable to appeals from agency decisions, the Maryland Rules provide generally that the times specified by the rules "requir[ing] or allow[ing] an act to be done" may be shortened on the motion of any party and for cause shown. Md.Rule 1–204. Moreover, the Maryland Rules provide that a person may apply for an *ex parte* injunction or an interlocutory injunction at any time. The procedures for obtaining an *ex parte* injunction assure a most expedited schedule. *See, e.g.,* Md.Rule BB72. These rules are repeatedly used to achieve the most prompt review and appeal of a broad array of time-sensitive issues, such as election disputes, death penalty cases, and public health matters.

I agree with the district court that in this case that prompt judicial review is available through the ordinance and through Maryland's rules of civil procedure, assuming that such review is required.

### V

A county's interest in preserving the quality of its community, by enacting an ordinance such as the Harford County Adult Bookstore Licensing Law, is one "that must be accorded high respect." *Young,* 427 U.S. at 71, 96 S.Ct. at 2453. Furthermore, "[i]t is manifest that society's interest in protecting [expression of "erotic materials that have some arguably artistic value"] is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." *Id* . at 70, 96 S.Ct. at 2452. My review of the ordinance in this case for the defects alleged by Chesapeake B & M leads me to conclude that the county's effort in this case does not run afoul of the First Amendment. It does not, I submit, even incidentally impinge upon free speech or the free exchange of ideas in Harford County. Accordingly, I would affirm the judgment of the district court and therefore respectfully dissent.

I am authorized to report that Judges RUSSELL, WIDENER, and CHAPMAN join in this dissenting opinion.